Jacquelin Perez ORANTES, Appellant,

v.

Daniel ORANTES, Appellee.

No. 10–405.

Supreme Court of Arkansas.

April 14, 2011.

James, Carter & Coulter, PLC, by: Misty Wilson Borkowski, Little Rock, for appellant.

Robertson Law ·Firm, by: Bonnie Robertson, Little Rock, for appellee.

KAREN R. BAKER, Justice.

Appellant Jacquelin Perez Orantes appeals from a Grant County Circuit Court change-of-custody order awarding custody of the parties' daughter, J.O., born March 2002, to appellee Daniel Orantes. On appeal, Jacquelin asserts that the circuit court erred in ordering a change of custody for three reasons: (1) because there was not a change of circumstances; (2) because consideration of immigration status violates constitutionally protected, substantive-due-process rights; and (3) because consideration of immigration status violates policy considerations under Arkansas law. This case presents an issue of first impression and a significant issue needing clarification or development of the law. Thus, our jurisdiction is pursuant to Ark. Sup.Ct. R. 1–2(b)(1) and (5) (2010). We reverse and remand.

Jacquelin and Daniel were divorced on July 25, 2005. Incorporated into the divorce decree were the terms of the separation and property settlement agreement that stated that Jacquelin was a fit and proper person to have sole care and custody of J.O., that Daniel was to pay child support, that Daniel was to have reasonable visitation, and that Daniel was responsible for all transportation for visitation. On March 3, 2009, the State of Arkansas, Office of Child Support Enforcement, filed a motion to modify support asserting that Daniel's gross income had changed by more than twenty percent or had changed by more than one hundred dollars per month. On April 13, 2009, Daniel filed a motion for change of custody alleging that several factors constituted a change in circumstances: (1) that the minor child "continues" in the custody of an illegal alien; (2) that Daniel was "now in legal status in the United States"; (3) that Jacquelin places J.O. in imminent danger by driving a motor vehicle without a valid driver's license; (4) that Daniel has remarried and has a stable and loving home for J.O.; and (5) that J.O. was currently not living in a stable home because Jacquelin was in the United States illegally.

A hearing was held on the motion for change of custody on December 14, 2009. Guillermo Hernandez testified as an expert witness and stated that his law practice is ninety-nine percent immigration law. He explained that temporary protected status (TPS)[1] is a designation assigned by the United States Attorney General to certain immigrants that are unable to return to their country of origin because of unsafe conditions or because their country is not adequately prepared to receive them back. He stated that persons who have TPS are not subject to removal, are authorized to be in the United States, are able to get an employment-authorization card that entitles them to get a social security card, and are able to get a driver's license. Hernandez testified that the Attorney General reviews TPS cases every couple of years to determine if the persons are able to return to their countries safely and that TPS was available to persons who entered the United States both legally and illegally.

Daniel Orantes testified, through an interpreter, that he came to the United States illegally thirteen years ago from El Salvador, and after five years, he obtained TPS. He stated that each time it was up for renewal, his TPS had been renewed and that his employment-authorization card had an expiration date of September 9, 2010. Daniel said that he wanted custody of his daughter because Jacquelin, without a valid driver's license, drove with J.O. in the vehicle, because Jacquelin was in the United States illegally, and because he was afraid that Jacquelin would take J.O. to Mexico. Daniel also expressed a concern that if Jacquelin was caught by immigration, J.O. would stay with persons other than him. He admitted that Jacquelin had never threatened to take J.O. to Mexico; however, he stated that before they divorced, Jacquelin had taken J.O. to Mexico without his permission.

Daniel testified that he had been married to his wife for six months and that he had another daughter. He said that his house had three bedrooms and two bathrooms and that if he had custody of J.O., she would have her own bedroom and bathroom. He stated that he had his own vehicle and that he would drive her to daycare. He initially said that the last time he had visited J.O. was three months prior to the hearing, but prior to that he had seen her every two weeks. Later, he admitted that he had not seen J.O. in a year because Jacquelin raised her voice at him and he did not wish J.O. to witness such behavior. He also said that Jacquelin's husband threatened him.

Daniel testified that in the last two years he had not called J.O. on her birthday or spent birthdays with her, attended parent-teacher meetings, or attended any school plays that J.O. had been in. His reason for not doing these things was that no one had informed him that he had the right to participate in such things. Daniel admitted receiving a copy of the divorce decree and the separation and property settlement agreement, but he stated that he could not read English.

Jacquelin testified, through an interpreter, that she had been married to Eduardo Lara for seven months at the time of the hearing. She said that she has five children who have four different fathers. She stated that she does not work outside the home and that her family had been living at their current two-bedroom, one-bathroom home for four years. She said that J.O. had her own bedroom now because

---

1. The federal statute governing temporary protected status is codified at 8 U.S.C. § 1254a (2000).

her older sister, with whom she normally shared the room, was in Mexico. Jacquelin testified that J.O. needed special-education classes but that she was doing well in school. She said that it had been one-and-a-half to two years since Daniel had visited J.O., and she denied forbidding him to see or visit their daughter. She admitted that Daniel did not have her new phone number but stated that he did know where she lived and where J.O. went to school. Jacquelin explained that when she suggested to Daniel that he have visitation with J.O. every weekend, he said that he had to work and did not have anyone to take care of her.

At the end of the hearing, the trial court made the following ruling from the bench:

Ms. Perez is an illegal alien. She has had at least five years since they've separated to remedy that, four and a half since the divorce. She drives illegally. She is subject to being stopped and incarcerated and ultimately deported. The children could be taken, particularly this child, and maybe delivered to some other family member if she were to say that the whereabouts of the father is unknown. There were two kids, there are now five. The oldest is nine and she's in Mexico for at least the last two months, [and] thinks she [is] coming back at the end of this month. And there are three very young children, three, two and one, one of those born by a prior a relationship when she joined with Mr. Perez. He, too, is an illegal. He works. At least that's the testimony. It would be presumptive but probably correct that that probably means that he doesn't declare by paying taxes. Neither of these are showing the concern and dedication to comply with this Country's laws, this Country's policies and procedure. It's a great place to live, but you have no obligation to it. I believe that public opinion lashes out at

these type conditions, and I believe it's not appropriate for a Court to condone them. When at least there's at hand a legally qualified custodial parent, or a person that could be a custodial parent. Thus, the Court finds that there has been a substantial change in custody—I mean circumstances and grants an immediate change to the Defendant, Daniel Orantes.

A written order was entered on December 9, 2009, stating that Daniel was awarded custody of J.O. due to a material change in circumstances. This appeal followed.

This court reviews child-custody cases de novo, but will only reverse if the trial court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Stehle v. Zimmerebner*, 375 Ark. 446, 291 S.W.3d 573 (2009). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.*

Jacquelin argues that the trial court's finding that there had been a material change in circumstances was clearly erroneous because the facts allegedly giving rise to a material change of circumstances—her immigration status and lack of an Arkansas driver's license—have not changed since the entry of the original custody order. A decree establishing custody is final on conditions then existing. *Lloyd v. Butts*, 343 Ark. 620, 37 S.W.3d 603 (2001); *Campbell v. Campbell*, 336 Ark. 379, 985 S.W.2d 724 (1999). To facilitate stability and continuity in the life of a child and to discourage repeated litigation of the same issues, custody can be modified only upon a showing of a material change of circumstances. *See, e.g., Stills v. Stills*, 2010 Ark. 132, 361 S.W.3d 823; *Stehle, supra; Campbell, supra.* The party seeking modification of the custody or-

der has the burden of showing a material change in circumstances. *Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996). In order to avoid the relitigation of factual issues already decided, trial courts will restrict evidence on a custodial change to facts arising since the issuance of the prior order. *Campbell, supra.*

Jacquelin is correct that neither her immigration status nor Daniel's has changed since the entry of the prior custody order. Nonetheless, Daniel argues that these facts support the trial court's finding that a material change of circumstances had occurred because they were not presented to the trial court at the time the original custody decree was entered.

■■■■ When circumstances affecting the best interests of the child were not presented to the trial judge at the time the original custody order was entered, they can be considered in determining whether a material change of circumstances has occurred. *Hamilton v. Barrett*, 337 Ark. 460, 989 S.W.2d 520 (1999). However, the exception to the general rule that custody orders are final as to circumstances then existing has no application where the parties were aware of the circumstances and entered into an agreement that is approved by the court. *Cf. Brewer v. Brewer*, 239 Ark. 614, 390 S.W.2d 630 (1965) (right or claim existing at the time of settlement is extinguished when agreement is approved by court and incorporated into final divorce decree). The trial court is rarely, if ever, apprised of all the circumstances leading to a custody settlement, yet when incorporated into a divorce decree, they are nonetheless final orders. *Miller v. Miller*, 208 Ark. 1058, 189 S.W.2d 371 (1945). Agreed orders of custody would have no finality if these circumstances could later be used as a basis to modify custody. *Cf. Brewer, supra.* Circumstances known by the parties when they enter into a custody agreement cannot be the basis for finding that a material change in circumstances has occurred. *Jones, supra.*

■■■■ Daniel also urges us to look behind the original custody order because Jacquelin and her divorce attorney "advised" him to "make things easier by just going with them, and just signing" and that Jacquelin translated both the divorce proceedings and the divorce decree. A custody order can be modified based upon facts that existed when the previous order was entered when fraud was committed to obtain custody. *Nutt v. Nutt*, 214 Ark. 24, 214 S.W.2d 366 (1948); *see also Jackson v. Jackson*, 253 Ark. 1033, 490 S.W.2d 809 (1973) (party seeking to not be bound by the effects of an agreement must show by a preponderance of the evidence the elements of fraud). However, the reasons advanced by Daniel for entering into the settlement agreement do not rise to the level of fraud.

■■■■ Daniel argues that even when limited to events occurring subsequent to the original custody order, both he and Jacquelin had undergone changes in their lives that amounted to a material change of circumstances. He points to the fact the he had remarried and had another child, and Jacquelin had remarried and had three additional children born out of wedlock and fathered by two different men.[2] However, custody awards should not be made or modified to punish or reward parents. *Burns v. Burns*, 312 Ark. 61, 847 S.W.2d 23 (1993); *Johnson v. Arledge*, 258 Ark. 608, 527 S.W.2d 917 (1975).

---

2. Daniel's youngest child was also born out of wedlock. At the time of the hearing he indicated that he had another child who was three years old but had only been married six months.

Daniel also urges that his three-bedroom, two-bathroom home provided a more loving and stable environment for J.O. because it permitted her to have her own bedroom and bathroom, in contrast to Jacquelin's two-bedroom, one-bathroom home where seven persons lived. But, merely because one parent has more resources or income is not a basis upon which to change custody. *Malone v. Malone,* 4 Ark.App. 366, 631 S.W.2d 318 (1982).

Because Daniel failed to prove a material change of circumstances, we hold that the circuit court clearly erred in changing custody of J.O. from Jacquelin to Daniel. Accordingly, we reverse and remand for entry of an order consistent with this opinion. Our holding makes it unnecessary to address the additional arguments raised by Jacquelin as bases for reversal.

Reversed and remanded.