
# SUPREME COURT OF ARKANSAS

No. CV–13–454

| | |
|---|---|
| SHAUNA CHANTEL YATES MCNUTT<br><br>APPELLANT<br><br>V.<br><br>MATTHEW DALTON YATES<br>APPELLEE | **Opinion Delivered** October 31, 2013<br><br>APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT<br>[NO. DR–2010–592]<br><br>HONORABLE SANDY HUCKABEE, JUDGE<br><br><u>AFFIRMED IN PART; REVERSED AND REMANDED IN PART; COURT OF APPEALS' OPINION VACATED</u>. |

**PAUL E. DANIELSON, Associate Justice**

Appellant Shauna Chantel Yates McNutt appeals from the circuit court's order changing custody of the parties' minor children to appellee Matthew Dalton Yates. The court of appeals affirmed the circuit court's order in part and reversed and remanded in part in a 5–1 decision. *See McNutt v. Yates*, 2013 Ark. App. 307, ___ S.W.3d ___. Ms. McNutt petitioned this court for review, which we granted on July 25, 2013. When this court grants a petition for review, we treat the appeal as if it had been originally filed in this court. *See Payne v. Arkansas Dep't of Human Servs.*, 2013 Ark. 284. On appeal, Ms. McNutt asserts three points of error by the circuit court: (1) that it abused its discretion in denying her motion for a continuance after granting her counsel's motion to withdraw; (2) that it erred in finding that Mr. Yates proved a material change in circumstances and in awarding him custody; and (3)

that it did not have the power to retroactively modify child support to April 2011. We affirm the circuit court's order in part and reverse and remand in part.

The parties were divorced by order of the circuit court on September 9, 2011. The parties were awarded joint legal custody of M.Y. and N.Y., the two children from the marriage, with Ms. McNutt having primary physical custody and Mr. Yates receiving visitation. In addition, Mr. Yates was ordered to pay Ms. McNutt $152 per week in child support, based on his income of $585 per week.

On September 28, 2011, Ms. McNutt filed a motion for contempt, request for modification, and for review of child support. In it, Ms. McNutt alleged numerous violations of the divorce decree for which she believed Mr. Yates should be held in contempt, including that Mr. Yates had harassed her by verbally abusing her; had made disparaging comments about her in the children's presence; had hampered communication between her and the children; had failed to pay child support; had had overnight guests of the opposite sex; had used alcohol in excess; and had refused to return Ms. McNutt's personal property. She further requested a modification of Mr. Yates's visitation and the circuit court's order to sell her vehicle at a commissioner's sale. Finally, Ms. McNutt requested that the circuit court review Mr. Yates's income because she believed it to be more than $585 per week.

On October 21, 2011, Mr. Yates answered Ms. McNutt's motion and filed his own motion for contempt, modification, and motion for relief of outstanding issues. In it, he alleged that Ms. McNutt had violated the divorce decree when she failed to communicate with him regarding the children's well-being; failed to inform him of emergency care or

2

nonroutine medical care provided to the children; denied him visitation to the point that police involvement was required; used the children to communicate with him; made disparaging remarks about him in front of the children and allowed others to do so; allowed third parties "to act inappropriately toward" him in front of the children; continued to harass him and make baseless allegations against him; and had not paid a debt for which she was responsible, such that he was receiving notices about the debt. He further requested that the first right of refusal for childcare be added to the divorce decree; that she be required to reimburse him for a joint debt that he was required to pay in full because of Ms. McNutt's failure to cooperate; and that she be ordered to communicate with him regarding an IRS inquiry as to their joint tax return.

He subsequently filed a motion for modification of custody on March 2, 2012. Mr. Yates again alleged that Ms. McNutt had continued to be noncompliant with the circuit court's orders and would not facilitate or promote a relationship between the children and him; he further asserted that Ms. McNutt actively attempted to disrupt his relationship with the children. In addition, he alleged that the children spent more time with Ms. McNutt's parents than with her; that her parents' home was "filthy" and in an unsafe neighborhood; that her parents were unable to assist the children with their homework and caused them to be late to school on several occasions; that he disagreed with Ms. McNutt's choice of school for the children, in that it conflicted with "the religious upbringing the parties had agreed upon for the children" and was unaccredited; that Ms. McNutt refused to allow the children to participate in extracurricular activities and further prevented them from engaging in age-

appropriate activities, such as dancing, wearing nail polish, participating in organized sports, and wearing appropriate clothing to the extent that the children feared punishment or religious backlash; and that the children had expressed a desire to live with him. For these reasons, he stated, he sought to be granted full custody and for Ms. McNutt to receive reasonable visitation.

The matters were set for trial on April 12, 2012; but on March 16, Ms. McNutt's counsel moved to withdraw, stating that he and Ms. McNutt had irreconcilable differences such that he could no longer represent her. The circuit court granted the motion, and on April 11, 2012, the day before the set trial date, Ms. McNutt moved for a continuance pro se. That motion was denied, and the hearing on the foregoing matters was held on April 12.

On May 9, the circuit court entered its order. In it, the circuit court found there to be a material change of circumstances in light of the fact that Ms. McNutt now had the children attending a private school not accredited by the State; she had the children attending a church associated with the school that the parties had agreed during the marriage not to attend; the children were no longer in extracurricular activities as they were during the marriage; and the children's overall demeanor had changed in a negative way since entry of the divorce decree. The circuit court then found it to be in the children's best interest to change custody to Mr. Yates and award visitation to Ms. McNutt. It further ordered that should either party need a care provider for the children, the other party had the first right of refusal to provide that care. In addition, the circuit court ordered Ms. McNutt to pay child support in the amount of $301 biweekly, and it retroactively modified Mr. Yates's past child-

support obligations to April 2011, "when Mr. Yates was receiving $300/week in unemployment compensation benefits which is $107.00/week child support." Ms. McNutt was ordered to reimburse Mr. Yates for her share of the marital debt that he had paid to the Arkansas Department of Finance and Administration, and she was ordered to communicate with the IRS about that matter and to notify Mr. Yates of that communication. It further denied all remaining claims for relief. Ms. McNutt brings the instant appeal from this order.

I. *Withdrawal of Counsel and Motion for Continuance*

For her first point on appeal, Ms. McNutt argues that the circuit court abused its discretion in allowing her counsel to withdraw and in its subsequent denial of her motion for continuance. She contends that the circuit court should have denied the motion to withdraw where her former counsel stated no facts in support of his claim that there were irreconcilable differences with her and the circuit court failed to make any inquiry thereto. She further maintains that the circuit court abused its discretion in denying her motion for continuance and forcing her to go to trial when she was not well-versed in the law.

Mr. Yates counters that Ms. McNutt never challenged the circuit court's order relieving her counsel; therefore, that issue is waived for purposes of appeal. He further contends that there was no abuse of discretion in the circuit court's denial of her continuance motion, where she had twenty-seven days in which to find alternate counsel and where she did not file the motion until the day before the hearing date.

A. Withdrawal of Counsel

Ms. McNutt first challenges the circuit court's grant of her former counsel's motion

to withdraw; however, that issue is not preserved for our review. A review of the record reveals no written or verbal objection made by Ms. McNutt to the circuit court opposing her counsel's motion to withdraw. This court has been resolute that objections must be timely and even constitutional objections are waived unless made to the circuit court. *See Henry v. Eberhard*, 309 Ark. 336, 832 S.W.2d 467 (1992).

## B. Motion for Continuance

The denial of a motion for a continuance is within the sound discretion of the circuit court, and the circuit court's ruling will be reversed only if there is an abuse of discretion. *See Jacobs v. Yates*, 342 Ark. 243, 27 S.W.3d 734 (2000). The burden is on the appellant to show an abuse of that discretion as well as to demonstrate prejudice before this court will consider the circuit court's denial of a continuance as an abuse of discretion warranting reversal. *See id.*

Here, Ms. McNutt's counsel was permitted to withdraw by order of the circuit court on March 16, 2012, and she did not file her motion for continuance until April 11, 2012. In it, she merely stated, in effect, that she had attempted to find counsel, but was unable to do so. She further averred that she was currently pro se only because she lacked the funds to hire counsel, and she sought a continuance to permit her more time in which to find legal representation.

In her brief on appeal, Ms. McNutt points to no other prejudice than the facts that she lost custody of the children to Mr. Yates and that she did not know proper trial procedure so as to make relevant objections. This court does not presume bias or prejudice. *See, e.g.,*

6

*Committee for Util. Trimming, Inc. v. Hamilton*, 290 Ark. 283, 718 S.W.2d 933 (1986). Merely because Ms. McNutt did not prevail in the instant action does not suffice to prove prejudice. Accordingly, we affirm the circuit court's denial of her motion for continuance.

II. *Material Change in Circumstances and Best Interest of the Child*

In her second point on appeal, Ms. McNutt asserts that the circuit court erred in finding a material change of circumstance that warranted a change of custody. She contends that there was no change in circumstance relating to the children's school and church, as they were attending the same school and church at the time of the parties' divorce; the same, she urges, applies to the circuit court's finding regarding the children's lack of participation in extracurricular activities. Finally, she asserts, the circuit court's finding of a change in the demeanor of the children can be attributed solely to Mr. Yates's new wife, who she alleges does not agree with Ms. McNutt's religious practices. She further states that the "only time their demeanor changes is when they are with their father and his new wife."

Mr. Yates responds, conceding that the children were attending the same church and school as they were before the divorce decree was entered; however, he contends that Ms. McNutt failed to consult him on her decision to change churches and enroll the children in that school. He further states that it was not until after the divorce that Ms. McNutt changed her behavior and became more strict in her Pentecostal beliefs and lifestyle, which had grave effects on the children. He maintains that the circuit court's main focus and concern regarding the change of the children's church and school related to the negative impact these abrupt changes had on their demeanor since entry of the divorce decree. He further avers that

7

much evidence was presented to demonstrate that, since the entry of the divorce decree, the children have acted in an unsettling manner and have been put under undue stress by Ms. McNutt. In addition, he notes, there was sufficient evidence before the circuit court on which this court could find a change in circumstances due to Ms. McNutt's interference with Mr. Yates's relationship with his children.

In reviewing child-custody cases, we consider the evidence de novo, but will not reverse a circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *See Hamilton v. Barrett*, 337 Ark. 460, 989 S.W.2d 520 (1999). We give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses. *See id.* This deference to the circuit court is even greater in cases involving child custody, as a heavier burden is placed on the circuit court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *See id.* Where the circuit court fails to make findings of fact about a change in circumstances, this court, under its de novo review, may nonetheless conclude that there was sufficient evidence from which the circuit court could have found a change in circumstances. *See id.* (citing *Campbell v. Campbell*, 336 Ark. 379, 985 S.W.2d 724 (1999); *Stamps v. Rawlins*, 297 Ark. 370, 761 S.W.2d 933 (1988)).

Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *See Alphin v. Alphin*, 364 Ark. 332, 219 S.W.3d 160 (2005). A judicial award of custody should not be modified unless it is shown that there are changed conditions that demonstrate that a

modification of the decree is in the best interest of the child, or when there is a showing of facts affecting the best interest of the child that were either not presented to the circuit court or were not known by the circuit court at the time the original custody order was entered. *See id.*

Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. *See id.* The reasons for requiring these more stringent standards for modifications than for initial custody determinations are to promote stability and continuity in the life of the child and to discourage the repeated litigation of the same issues. *See id.* In order to avoid the relitigation of factual issues already decided, the courts will restrict evidence on a custodial change to facts arising since the issuance of the prior order. *See Stehle v. Zimmerebner*, 375 Ark. 446, 291 S.W.3d 573 (2009). The party seeking modification has the burden of showing a material change in circumstances. *See id.* Here, the circuit court found that the change in the children's demeanor "in a negative way" since the parties' divorce, among other bases, constituted a material change in circumstances.[1] We agree with that particular finding, but note, through the context of our de novo review, that there was other additional evidence before the circuit court that, when coupled with the change in the children's demeanor, sustains a finding of a material change in circumstances.

---

[1]As already noted, the circuit court also found that, since the divorce decree, the children were attending an unaccredited school and a church associated with that school that the parties had agreed during their marriage not to attend, and that the children were no longer engaged in extracurricular activities as they were during the marriage. Because there is a dispute between the parties as to whether these events occurred since the divorce or existed prior to that time, we note that our decision today is based solely on our de novo review of the evidence and bases specifically set forth in this opinion.

*See, e.g., Hamilton*, 337 Ark. 460, 989 S.W.2d 520.

In the hearing before the circuit court, Ms. McNutt testified that, just prior to the hearing, she had called the Child Abuse Hotline of the Arkansas Department of Human Services ("DHS") to report that Mr. Yates and his current wife fondled each other in the children's presence and that Mrs. Yates walked around in her underclothing in front of the children. In addition, she stated, she reported that the Yateses performed sexual acts in front of the children and that Mr. Yates forced N.Y. to take medicine when he was not sick. She admitted, however, that she had not "seen or witnessed anything." Ms. McNutt further testified that she told other parents at the children's school that Mr. Yates was addicted to pornography and that he and his current wife were bisexual and had sex with multiple partners and that she had told still others, without any proof, that Mr. Yates had killed the children's puppy. Ms. McNutt also admitted to telling the police and others, again, without any proof, that Mr. Yates had burglarized her home; this included the children, to whom she did not specifically confirm, but also did not explicitly deny, that their father may have been the one to break into her home.

Samantha Bishop, M.Y.'s fourth-grade teacher, also testified and confirmed that another parent had contacted her to relay concerns about Mr. Yates's behavior that the parent had heard from another parent in the weeks prior to the hearing. She stated that the concerned parent heard "[t]hat he had been involved in porn, in multiple partners, and that he'd never really had a relationship with [M.Y.] and . . . they didn't know why he was coming up to the school [to visit his children during their lunch and recess time]."

Johnathan Ball, a friend of Mr. Yates's for six or seven years and a relative of Ms.

McNutt's, testified that Mr. Yates had a good relationship with his children, but that it was "different now that all this is going on." He testified that with "all" that had been going on, it was "awkward . . . for the kids" and "a total shock to their . . . culture." He stated that the children acted differently and were distant since the parties' divorce. Cammy Yates, Mr. Yates's wife and the children's stepmother, also testified that, since the divorce, "it's gotten worse and worse" when the children came to their house for visitation. She stated that on several occasions in the last couple of weeks prior to the hearing, M.Y. had asked her questions that she felt were abnormal coming from a ten-year-old child. She testified that the children are "real scared about getting in trouble."

For instance, Mrs. Yates explained, when they would go to the mall to shop, M.Y. looked around and, if she saw anyone from her church, hid in a store because she was worried about getting in trouble for wearing what is considered in the Pentecostal faith to be nontraditional clothes. She further testified that the children had occasionally "expressed concern or upset before going back to" Ms. McNutt. For example, she testified that she took M.Y. for a manicure and pedicure, but on arriving back at home, M.Y. began to cry and said that the nail polish had to be removed "because I will get in trouble" at school and with her mother.

Mrs. Yates testified that M.Y. had attempted to "catch [her] naked" on several occasions, and M.Y. had asked about her sex life with Mr. Yates. Mrs. Yates stated that M.Y. had asked her, approximately two or three weeks prior, how one obtained AIDS and whether Mrs. Yates had it. She testified that her husband had made attempts to not meet Ms. McNutt at her church to exchange the children because it made the children uncomfortable, and the

11

children would get out of the car and cover themselves. She further testified that recently, since the divorce, it had been "[t]ough on the kids."

Mr. Yates also testified. He stated that there has been no communication from Ms. McNutt regarding the children's needs relating to school, such as needing to bring things or school projects, or when they have been invited to birthday parties, requiring a gift to be purchased, that fall on a day that he has visitation with the children. He testified that instead of letting him know beforehand, he is told by the children on the day he has visitation with them that they have a project due the next day.

He further stated that Ms. McNutt makes disparaging remarks about him in front of the children and allows others to do so. Mr. Yates testified that, that very day, his children were sitting in the hallway of the courthouse during the hearing. He stated that he heard Ms. McNutt state to her family, including the children, that "[he and the witnesses on his behalf] were all a bunch of liars and that we were in there trying to take the kids from her." He testified that he overheard Ms. McNutt's mother telling the children that there were lies being told in the courtroom about them. Mr. Yates stated that, while they were in the hallway, he also saw Ms. McNutt allowing their daughter to read an order for his drug testing.

Mr. Yates testified that as late as the week before the hearing, M.Y. wanted to attend a dance camp. The problem though, he testified, was that she would have to do it without Ms. McNutt's permission or authority, because she "will be in trouble if she does anything like that, she's not allowed to do that at her mom's." He further testified that he noticed a change in M.Y.'s demeanor since she was told that dance and gymnastics were "bad," that she had become "just kind of down" and "sad" about it. He stated that, prior to the divorce, she

12

had participated in those activities.

With respect to N.Y., Mr. Yates testified that he was "having to struggle to get him into team sports" because Ms. McNutt refused to take N.Y. and told Mr. Yates that her pastor did not believe in organized sports. He testified that both of the children are "on guard when they're around" their mother, and that as soon as she is not around, "it's like a light switch goes off and they are completely different children." He stated that when Ms. McNutt is present, the children are not affectionate with him; they appear scared to give him any affection in front of her. However, he stated, when she is not around, he cannot get the children "off" him; they want to sit in his lap and hug him. He stated that it is "like a completely different life . . . when she is not around."

Finally, in a video deposition that was also admitted and considered by the circuit court, Elaine "Laney" Yates, Mr. Yates's mother, testified that since the divorce, the children's demeanor had really changed. She stated that she had caught M.Y. spying on her, Mr. Yates, and Mrs. Yates, trying to overhear things. She testified that she had taken M.Y. shopping and that most of the clothes M.Y. chose were not traditional, Pentecostal attire. She stated that M.Y. did not "think about it until right before she . . . has to go home, and then she starts getting scared."

Laney also testified that she had taken M.Y. to get a pedicure at the beginning of her visitation with Mr. Yates, but that on the night or day she was due to return to her mother, she had taken off the nail polish. She stated that M.Y. "was in a panic" to remove the residue that had stained her nail; M.Y. told her that she had to get it off. Laney stated that N.Y. then said that their mother was going "to be real mad at [M.Y.]." She testified that M.Y. was

13

SLIP OPINION

depressed and needed counseling because she was unhappy. She also said that M.Y. would get angry when she normally "wasn't like that at all."

We have been clear that in resolving the clearly erroneous question, we must give due regard to the opportunity of the circuit court to judge the credibility of witnesses. *See Hudson v. Kyle*, 365 Ark. 341, 229 S.W.3d 890 (2006). Additionally, we give great weight to the circuit court's personal observations; this is so because there are no cases in which the superior position, ability, and opportunity of the circuit court to observe the parties carries a greater weight than those involving the custody of minor children. *See id.* In this case, Ms. McNutt herself seems to agree that there has been a change in the children's demeanor, although she attributes it to Mrs. Yates's influence. However, the circuit court was not required to find to whom the change in demeanor should be attributed; it simply needed to find that there was a material change in circumstances, which it did when it found that there existed a change in the children's demeanor "in a negative way" since the parties' divorce. In light of the testimony before the circuit court, we cannot say that this finding was clearly erroneous. But, in addition, there was the testimony before the circuit court in support of Mr. Yates's contention that Ms. McNutt did not facilitate or promote a relationship between him and the children and actively attempted to disrupt the relationship they had, since their divorce.

To find that the circuit court clearly erred, we must be left, on the entire evidence, with a definite and firm conviction that a mistake has been committed. *See Campbell v. Campbell*, 336 Ark. 379, 985 S.W.2d 724 (1999). After conducting our de novo review of the instant record, we are not so left. Our court of appeals has observed that the appellate court does not examine each of the circuit court's findings in isolation; certain factors, when

examined in the aggregate, may support a custody modification even where each factor, if examined in isolation, would not. *See, e.g.*, *Boudreau v. Pierce*, 2011 Ark. App. 457, 384 S.W.3d 664; *Davis v. Sheriff*, 2009 Ark. App. 347, 308 S.W.3d 169. And we have been clear that our de novo review in these cases means that a complete review of the evidence and the record may take place as part of the appellate review to determine whether the circuit court clearly erred. *See Stehle*, 375 Ark. 446, 291 S.W.3d 573. Having conducted such a de novo review in the instant case, we simply cannot say that the circuit court clearly erred in finding that a material change in circumstances existed.

We then must consider whether the change of custody to Mr. Yates was in the children's best interest. In its order, the circuit court stated as follows:

> In determining the children's best interest, the Court has considered the moral fitness, stability, and love and affection of the parties. The Court has also considered the children, their well-being, and all their relationships. . . . In sum, the Court has weighed the totality of the considerations in favor of Mr. Yates being granted custody of the children, though not to a significant degree. Ms. McNutt shall have the same visitation schedule with the children as Mr. Yates which is set forth in the September 9, 2011, Divorce Decree. The Court specifically finds said custody and visitation to be in the children's best interest.

We cannot say that the circuit court's decision was clearly erroneous.

It is more than clear from the instant record that Ms. McNutt loves and cares for her children, as does Mr. Yates. However, as already set forth, the circuit court considered these factors, in addition to others, as well as all of the testimony and evidence before it, and determined that it was in the children's best interest to change custody to Mr. Yates. We have emphasized that our de novo review in these cases does not mean that the appellate court becomes the surrogate circuit court. *See Stehle*, 375 Ark. 446, 291 S.W.3d 573. And

we have more than well established that the circuit court, in these types of cases, is in a much better position than this court to observe the parties' demeanor and assess their credibility. *See id.* Therefore, giving the great weight to the circuit court's observations as we must, we are unable to say that the circuit court clearly erred in finding that it was in the children's best interest for custody to be changed to Mr. Yates.

### III. *Retroactive Modification of Child Support*

For her final point on appeal, Ms. McNutt contends that the circuit court erred in retroactively modifying Mr. Yates's past child-support obligation back to April 2011. In his brief, Mr. Yates concedes for purposes of appeal that the circuit court erred in making such a modification.

Here, the circuit court stated that Mr. Yates's past child-support obligations were "retroactively modified to April 2011." However, we have held that a decree that contains a provision for the payment of child support shall be a final judgment until either party moves to modify the order. *See Guffey v. Counts*, 2009 Ark. 410. We have further observed that retroactive modification of court-ordered support may only be assessed from the time that a petition for modification is filed, absent a specific finding of fraud in procuring the existing support decree. *See id.* Accordingly, we reverse and remand on this issue.

For the foregoing reasons, we affirm in part and reverse and remand in part.

Affirmed in part; reversed and remanded in part; court of appeals' opinion vacated.

BAKER and HART, JJ., dissent.

**KAREN R. BAKER, Justice, dissenting.** While troubled by the circuit court's failure to grant a continuance after relieving appellant's counsel, I disagree with the majority

16

opinion's holding on McNutt's second point on appeal, and agree that the circuit court erred in assessing child support. Because the majority looks behind the divorce decree and ignores the standard of review, I must respectfully dissent.

We review child-custody cases de novo. *Brown v. Brown*, 2012 Ark. 89, 387 S.W.3d 159. In *Stehle v. Zimmerebner*, 375 Ark. 446, 291 S.W.3d 573 (2009), this court clarified the de novo standard of review, stating as follows:

> Equity cases are reviewed de novo. This means the whole case is open for review. This does not mean, however, and we emphasize this point, that findings of fact by the circuit judge in equity cases are simply dismissed. They are not. The clearly erroneous standard, cited above and set out in our rules of civil procedure, governs if the circuit judge has made findings of fact. As Rule 52(a) states:
>
> > Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous (clearly against the preponderance of the evidence), and due regard shall be given to the opportunity of the circuit court to judge the credibility of witnesses.
>
> In determining whether the circuit judge clearly erred in a finding, the appellate court may look to the whole record to reach that decision. But, to reiterate, to reverse a finding of fact by a circuit judge, that judge must have clearly erred in making that finding of fact, which means the reviewing court, based on the entire evidence, is left with the definite and firm conviction that a mistake has been made.
>
> To summarize, de novo review does not mean that the findings of fact of the circuit judge are dismissed out of hand and that the appellate court becomes the surrogate trial judge. What it does mean is that a complete review of the evidence and record may take place as part of the appellate review to determine whether the trial court clearly erred in either making a finding of fact or in failing to do so.

*Id*. at 455, 291 S.W.3d at 580 (internal citations omitted). While the majority opinion emphasizes that de novo review does not mean that the appellate court becomes the surrogate circuit court, that is exactly what the majority has done here.

To facilitate stability and continuity in the life of a child and to discourage repeated

litigation of the same issues, custody can be modified only upon a showing of a material change of circumstances. *Orantes v. Orantes*, 2011 Ark. 159, 381 S.W.3d 758. The party seeking modification of the custody order has the burden of showing a material change in circumstances. *Id*. In order to avoid the relitigation of factual issues already decided, trial courts will restrict evidence on a custodial change to facts arising since the issuance of the prior order. *Id*.

When circumstances affecting the best interests of the child were not presented to the circuit court at the time the original custody order was entered, they can be considered in determining whether a material change of circumstances has occurred. *Hamilton v. Barrett*, 337 Ark. 460, 989 S.W.2d 520 (1999). However, the exception to the general rule that custody orders are final as to circumstances then existing has no application where the parties were aware of the circumstances and entered into an agreement that is approved by the court. *Orantes*, *supra*. The trial court is rarely, if ever, apprised of all the circumstances leading to a custody settlement, yet when incorporated into a divorce decree, they are nonetheless final orders. *Id*. Agreed orders of custody would have no finality if these circumstances could later be used as a basis to modify custody. *Id*. Circumstances known by the parties when they enter into a custody agreement cannot be the basis for finding that a material change in circumstances has occurred. *Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996).

In this case, the divorce decree was entered on September 9, 2011. The circuit court, therefore, was barred from considering any changes that occurred before that date as evidence to support a finding of a material change in circumstances. The circuit court's order states as follows:

Since the Divorce Decree, Ms. McNutt now has the children attending a private school which is not accredited with the State; the children are attending a church associated with the school which the parties had agreed during the marriage not to attend; the children are no longer involved with extracurricular activities as they were during the marriage; and the children's overall demeanor has changed in a negative way since the entry of the Divorce Decree. Thus, the Court finds there to be a material change in circumstances.

Thus, the circuit court made four findings to support its ruling that there had been a material change in circumstances: (1) the church the children were attending; (2) the school the children were attending; (3) the lack of extracurricular activities that the children were participating in; and (4) the change in the children's demeanor. The majority recognizes that some of these circumstances existed prior to the divorce. However, the majority holds that the change in the children's demeanor and "other additional evidence" is sufficient to sustain a finding of a material change in circumstances.

It is clear from a de novo review of the record that the circuit court clearly erred in finding that the church the children attended, the school that the children attended, and the lack of extra-curricular activities for the children to participate in were material changes in circumstance. Yates admitted that the children attended the church and school before the divorce decree, and stated that the children had been forbidden to participate in extra-curricular activities for more than a year. These circumstances all existed prior to the divorce decree, and thus cannot be considered material changes in circumstance.

The majority bases its holding on the only remaining finding of fact made by the circuit court, the change in the children's demeanor. As evidence from its de novo review of the record, the majority points out a laundry list of evidence gained from testimony at the hearing. This evidence, however, was not shown to have an impact on the children's

19

demeanor, and is simply a listing of accusations of bad acts by McNutt or her family, most of which occurred, if they occurred at all, before the entry of the divorce decree.

The evidence that the majority opinion relies on to sustain the circuit court's finding of a change in the children's demeanor, mainly stems from M.Y.'s worries of getting in trouble over clothing and nail polish or her "sad" disposition in regards to no longer being able to participate in gymnastics. However, even if these issues were sufficient to support a change of circumstances determination, and they do not, both of these changes predate the divorce decree. It is uncontested that the reason that M.Y. does not participate in extra-curricular activities and worries about wearing nail polish and specific types of clothing is the church and school that she attends, a church and school that she attended before the divorce decree was entered. Yates further testified that M.Y. had been "like that for a year or actually more than that." As the hearing was held in April 2012 and the divorce decree was entered in September 2011, any change in M.Y.'s demeanor predated the entry of the divorce decree.

The majority also puts great weight on the statement by McNutt that there has been a change in the children's demeanor, which she ascribes to Yates's wife. However, it is clear from the record that McNutt's belief relates to the children's reactions to the different lifestyles of their parents. These circumstances were in place prior to the divorce decree and were thus not before the circuit court in this case.

The party seeking modification of the custody order has the burden of showing a material change in circumstances. *Orantes*, *supra*. The evidence presented by Yates does not establish whether the changes in the children's demeanor came before or after the divorce decree. For example, Yates's mother testified that M.Y. had been caught spying and trying

20

to overhear things, but it is not clear whether these incidents occurred before or after September 9, 2011. Because Yates has the burden to show that a change has occurred since the entry of the divorce decree, evidence failing to establish that it occurred after the last custody order cannot meet his burden.

Therefore, the only evidence that Yates presented to show a change in the demeanor of his children since the entry of the divorce decree is the testimony of his wife, Cammy Yates, and the testimony of Johnathan Ball, his friend and McNutt's cousin. Ball stated that the children acted differently and were distant since the divorce, but did not tie this to any specific actions on the part of either child. Cammy Yates stated that M.Y. had asked her several questions she felt were abnormal for a ten-year-old girl over the few weeks before the hearing and that the children's behavior has gotten "worse and worse" since the parties' divorce.

However, I can find no cases where this court has held that the change in the demeanor of a child alone was sufficient to constitute a material change in circumstances. In so holding now, the majority abrogates the finality of custody orders. Under the majority's entirely subjective standard, the noncustodial parent has the opportunity to relitigate the issue of custody any time the noncustodial parent perceives a change in a child's "demeanor."

The majority opinion also states that there was testimony before the circuit court in support of Yates's contention that McNutt did not facilitate or promote a relationship between him and the children and actively attempted to disrupt the relationship since the divorce. However, the circuit court made no such finding. On de novo review, this court does not make its own findings of fact, or state that there was sufficient evidence for the

21

circuit court to make a finding of fact that it did not make. Instead, as stated above, we review the record to ensure that the evidence supports the circuit court's findings of fact. It is clear, then, that without a finding of fact, this court has nothing to review. Ignoring this, the majority looks at evidence that predates the divorce decree and conjures up a finding of fact that the circuit court did not make, namely that McNutt had actively attempted to disrupt Yates's relationship with their children.

Because I do not believe that a de novo review of the record supports the circuit court's finding that there was a material change in circumstances, I would reverse the circuit court's order.

HART, J., joins.

*Alexander Law Firm*, by: *Hubert W. Alexander*, for appellant.

*The Law Offices of Katherine E. Blackmon*, by: *Katherine E. Blackmon*, for appellee.