Cite as 2022 Ark. App. 171

# ARKANSAS COURT OF APPEALS
DIVISION I

No. CV-21-283

| | | |
|---|---|---|
| JOSHUA HAEBER | | OPINION DELIVERED APRIL 20, 2022 |
| | APPELLANT | |
| | | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT |
| V. | | [NO. 63DR-14-404] |
| KATERINA DAY | | HONORABLE ROBERT HERZFELD, |
| | APPELLEE | JUDGE |
| | | AFFIRMED |

**ROBERT J. GLADWIN, Judge**

Joshua Haeber appeals the Saline County Circuit Court's December 28, 2020 custody and visitation order, arguing that the circuit court erred in (1) failing to grant his continuance motion, (2) "forcing the parties into trial less than a week after appointing a 'guardian ad litem' to investigate and protect the interests of the parties' children," and (3) awarding attorney's fees to appellee Katerina Day. We affirm.

I. *Procedural History*

By paternity order filed December 16, 2014, the circuit court established that Haeber is the father of Day's two children: EH, born in 2012, and GH, born in 2014. Haeber was ordered to pay $526 monthly in child support, Day was granted sole custody, and Haeber was awarded unsupervised visitation. The order includes that "[c]ommunication between the parties at the visitation exchange should be reasonably related to immediate, significant

issues related to the children and should not be used to discuss problems between the parties." Further, "All communication between the parties shall be reasonable and [Haeber] shall consider what [Day] considers is reasonable communication between the parties."

In November 2016, Haeber moved for joint legal and physical custody, alleging that a material change in circumstances had occurred. He claimed that the parties had begun to communicate well, the children had aged, Haeber shared half the children's expenses, and the visitation exchange on Monday nights disrupted the children's schedule.

Following a May 30, 2017 hearing, the circuit court denied Haeber's motion. Further, pursuant to Day's contempt motion, the circuit court found Haeber in contempt because he had willfully refused to limit his correspondence with Day and had failed to consider what Day deems reasonable. Haeber was sentenced to ten days in jail, which was suspended contingent on his compliance with court orders. Haeber was ordered not to send text messages to Day "unless it is an emergency regarding the health or safety of the minor children, or regarding specific timely logistics," and he was limited to sending Day no more than one email a week, not to exceed two pages, double spaced. "However, such emails should not average out to more than two emails per month." Haeber was also ordered to pay $3,000 for Day's attorney's fees.

In November 2018, Day moved for contempt and to modify visitation. She alleged that Haeber had violated the court's order by calling her a "f****** b****" in front of the children and by telling the children that she is "evil" and trying to "take [the children] away from [him]." Her allegations also included that Haeber had kept the children from school

2

without notifying her, that he had sent her thousands of text messages since the May 30, 2017 hearing, and that he had exceeded the limit of two emails a month during most months.

Haeber did not respond to Day's motion, and at the hearing on February 15, 2019, the circuit court found Haeber in default. Following the hearing, the court found Haeber in contempt because he had failed to follow the court's order to limit his correspondence with Day and had continued to discuss inappropriate matters with the children, which resulted in a material change in circumstances. Visitation was modified to supervised visits every Sunday at 5:30 a.m. until Monday at 7:20 p.m., with specific instructions for exchanges. Haeber was ordered not to directly contact Day for any reason. Emergencies were to be communicated through Haeber's sister, Nichole Collins. Day's written permission, through Ms. Collins, was necessary for Haeber to attend any of the children's events or activities. Haeber was granted permission to attend specific events with the supervisor in attendance, and he was ordered to stay out of Day's "area" at any and all events. The parties were ordered to refrain from speaking to the children about "any issues between the parties," and neither party was to speak negatively to or about the other party in front of the children. Haeber was allowed phone visitation on Wednesdays and Fridays at 4:00 p.m., and the calls were limited to ten minutes. Finally, Day was awarded $3,750 in attorney's fees.

On January 2, 2020, Haeber moved to modify, seeking "restoration" of his visitation on a weekly basis. He claimed that one of the visitation supervisors is no longer available and that Day refused to permit a substitution. He alleged his willingness to attend counseling

3

and/or requested the appointment of an attorney ad litem. Day responded that she had allowed Haeber's sister, Misty Haeber, to supervise visitation every other Sunday and that Day had sent Haeber text messages, through his sister, to welcome him to attend all of the children's extracurricular activities. She alleged that Haeber had continued to argue with her about phone times, call durations, and visitation times. She asked that if an ad litem were appointed, Haeber be solely responsible for the fee.

On March 10, Day moved to modify support, asking that Haeber be required to pay half of the children's school and extracurricular-activities expenses. Day also moved for contempt, alleging that Haeber had told the children the following during a Skype call:

> [G]irls, listen to me and I want you to know this. The reason I can't see you on Wednesdays and Fridays now is because we have to wait for the judge to approve it. We have to go to Court in front of the judge and have him approve visitations. I am trying to get weekend visitations back. If you have any questions about this, ask your mom.

Further, Day alleged that many times, Haeber had exceeded the ten-minute limitation on phone calls, arguing with her when she prompted that it was time for the call to end.

On June 4, the circuit court found that Haeber's manipulation in front of the children had continued in that he had exceeded the time-limited duration of the phone calls. Therefore, all phone contact between Haeber and the children was terminated. His visitation was modified to unsupervised every other Sunday from 2:00 p.m. until 6:00 p.m. and supervised visitation every other Saturday from 2:00 p.m. until 6:00 p.m., contingent on his securing a supervisor. Explicit instructions regarding visitation exchanges were ordered, and the parties were ordered not to communicate during exchanges. "The supervisor shall

4

always be present and within ear shot during [Haeber's] visitation." Haeber was ordered not to contact Day for any reason, and the parties and visitation supervisor were ordered not to speak about any issues within the children's hearing. Haeber's child support was increased to $857 a month based on his $3,800 monthly income.

On July 4, Haeber moved to modify custody, alleging that Day had men with whom she has had relationships spending the night when the children were present and that Day had told the children not to tell Haeber. He alleged that GH had complained of her private parts hurting and that when this information was sent "through attorneys," nothing was done. Haeber also alleged that GH had bruises on her arms that appeared to be finger marks. He claimed that he took GH to Arkansas Children's Hospital (ACH) on advice of her pediatrician, and a DHS report was made. He alleged that he believed the children were not being cared for and were possibly being abused. He asked that an attorney ad litem be appointed.

On July 15, Day filed a verified emergency ex parte motion to terminate visitation. She alleged that Nicole Collins, Haeber's sister and visitation supervisor, texted her five minutes before the scheduled visitation exchange and stated, "Josh took the girls to [ACH] to be seen on advisement of Dr. Ostrom. There wasn't an accident or injury incurred here at the house, but they are still at the hospital with Josh." When called, Collins would not give Day any information other than that Josh was with the girls unsupervised at the hospital. She alleged that after the court terminated Haeber's phone visitation, he placed a mailbox

on her neighbor's property, and he daily puts letters, candy, toys, and other unnecessary items inside the mailbox for the children.

By order filed July 28, the circuit court found that Haeber's atypical way of dealing with the children causes problems and upsets the children. Haeber was admonished for the phone call between him and the children regarding visitation and "these proceedings." Haeber was also admonished to stop his inappropriate and dramatic behavior with the children. Haeber was found in contempt of court for exceeding the limitations of the ten-minute phone calls, and Day was awarded $2,000 in attorney's fees. Day's motion to terminate visitation and Haeber's motion for custody modification were reserved.

On July 28, Day moved for contempt and to terminate Haeber's visitation due to the allegations surrounding the visit to ACH and a June 24 text exchange between Haeber and EH, wherein EH had sent him a message, "[C]all me papa." He responded, "[D]id mama say it is ok to call?" The child replied, "[N]o!" Haeber then sent another message, "Mama has to say yes." The child stated, "[O]k." Haeber then sent two more texts, "[EH], mama has to say it's ok for you to text or call me. I love you very much!!!! If she says yes then text or call me, ok!!! I love you with all my heart." Then, "[I]f she says yes then you can text or call me anytime, ok." Day's motion also repeated the allegation that Haeber had erected a mailbox on the property line between her property and her neighbor's.

On July 31, Haeber moved for the appointment of an attorney ad litem. On October 9, Haeber's attorney moved to withdraw, and the court ordered that the attorney was relieved on October 12. An order appointing attorney ad litem was filed on December 4, and Haeber

was ordered to pay $1500 as a retainer against the ad litem's fees. Thereafter, Haeber filed a fifty-page document detailing the case from the moment of EH's conception. He also filed a two-page letter to the circuit court, and the court considered it a continuance motion, which was denied.

## II. *Final Hearing and Order*

A hearing was held on December 10, and Haeber asked for a continuance because he did not have an attorney and did not possess the skill required to represent himself; however, when the court denied his continuance motion, he proceeded pro se. The court disallowed evidence related to past litigation. When given an opportunity to make an opening statement, Haeber reiterated that he could not represent himself. The court considered Haeber's statements to be a renewed continuance motion, and the court stated,

> Mr. Haeber, you have been engaged in litigation in this matter for, I believe, six years. You've had at least three attorneys. You had one of the best attorneys around—I think universally acknowledged one of the best domestic relations attorneys in central Arkansas in Ms. Wineland. You—for whatever reason, that relationship ended.

> After that, you requested an ad litem, and I—or prior to your termination, I informed Ms. Wineland when you requested the ad litem that I would only—because of a significant number of attorney's fees that you have caused Ms. Day to incur, that I would only allow—I did not believe an ad litem—I always welcome Ms. Wiggins's assistance in matters. She is a terrific ad litem. But at the time, I did not feel it was necessary to have an ad litem because I was very familiar with the case and very familiar with everybody in it. But you—I informed your attorney that I would appoint an ad litem if you paid for it. And since you would be coming up with money to pay for it—be having to come up with money to pay for it and you had substantial attorney's fees outstanding that were owed to Ms. Stewart from Ms. Day, that you

7

would pay those off and pay for the ad litem, I would grant your motion for an ad litem.

That's—I'm ballparking $4,500, give or take, that you could have used to pay an attorney. And you've made a—we are grown-up adults who make decisions for ourselves. And to say that you have been denied the opportunity to have an attorney is flat wrong because you could have hired—Mr. Haeber, don't interrupt me. You had every opportunity. You had an attorney. You had access to thousands of dollars as evidenced by the fact that you have paid thousands of dollars to hire an attorney. And to further delay this case is bad for the kids, it's bad for the parties, and makes no sense to do so.

So just because you want—it feels very much like to the Court that you are heavily invested in drama of this, claiming victimhood, claiming that it's nobody—everybody else is out to get you. That is not something I can help you with.

What is fair is when we have rules and we all follow the same rules. If you play a game of Monopoly and one person is rolling the dice and playing and the other one throws the board up in the air and complains they didn't win because they didn't understand the rules, that is on them. So, your motion is denied.

Thereafter, the court took judicial notice of the circuit court file, pleadings, and previous testimony. Haeber declined to call a witness, so the court found that he had rested his case and denied his motion for change of custody.

In presenting her case, Day testified that she is an RN and that she had bathed and checked GH, who had no complaint about her private parts. She testified about Haeber's taking the children to ACH, and she said that GH's medical examination was invasive and that she had not been present. Day also said that Haeber had sent the girls text messages that seemed to encourage them to contact him, putting her in the position of having to say no. She said that Haeber's hostility continued and described that an envelope containing a child-support payment had quotation marks around her last name and listed Haeber as

8

"father provider." She said that the children love Haeber but that she is inclined to terminate visitation until he gets help and shows progress; alternatively, she suggested supervised visitation. Finally, she asked for attorney's fees.

After Haeber testified, the circuit court ordered that Haeber begin counseling sessions within sixty days and that his visitation be modified to supervised, every Saturday from 10:00 a.m. until 6:00 p.m., contingent on the supervisor being available. Haeber was not held in contempt, and Day was awarded $3,000 in attorney's fees. The court's order was filed on December 28.

On January 8, 2021, Haeber moved for a new trial pursuant to Rule 59 of the Arkansas Rules of Civil Procedure. On January 19, the circuit court denied the motion. The court found that Haeber's motion was premised on his argument that he had neither the time nor the finances to hire an attorney to prepare for trial. However, Haeber "manifestly had the time and money to hire an attorney . . . as evidenced by the fact that he did, in fact, hire an attorney for the trial. However, he chose to hire an attorney to represent his children rather than himself." Further, the court found that Haeber had the money to pay off his court-ordered attorney's fees in advance of the payment schedule, which was a prerequisite for court approval of the appointment of the ad litem. The court found that any burden created by appearing without an attorney was placed on Haeber by himself, and it would have been "profoundly unfair" for Day to bear the further cost and inconvenience of Haeber's decisions.

III. *Motion for Continuance*

Haeber timely appealed the circuit court's orders, and his appellate arguments mirror those made in his Rule 59 motion for new trial. This court generally reviews domestic-relations cases de novo but applies the abuse-of-discretion standard to the circuit court's decisions denying motions for continuance. *Goodson v. Bennett*, 2018 Ark. App. 444, at 6, 562 S.W.3d 847, 854. We will not find an abuse of discretion, however, unless a circuit court acted "improvidently, thoughtlessly, or without due consideration." *Id.* (citing *Gerber Prods., Co. v. CECO Concrete Constr., LLC*, 2017 Ark. App. 568, at 6, 533 S.W.3d 139, 143). The burden is on Haeber to show an abuse of discretion as well as to demonstrate prejudice before this court will consider the circuit court's denial of a continuance as an abuse of discretion warranting reversal. *McNutt v. Yates*, 2013 Ark. 427, at 6, 430 S.W.3d 91, 96.

Haeber argues that the circuit court erred by failing to grant his pro se motion for continuance. He asserts that he was left to represent himself after his attorney withdrew less than sixty days before the scheduled trial and that the only thing he knew to do was to "get through the hearing the best he could and to then secure counsel and seek reconsideration within the time allotted." He claims that he tried to introduce evidence and call witnesses but was either denied this opportunity or did not have the appropriate skills or knowledge to present his case. He states that he intended to bring before the court the issues of "overnight guests of the opposite sex, counseling for the minor children . . . , and the need for the minor children to have a father figure."

We hold that the circuit court did not abuse its discretion by denying Haeber's continuance motion. *See McNutt, supra* (affirming denial of continuance motion wherein

appellant's arguments were that she had been unable to find counsel; she was pro se only because she lacked funds to hire counsel; and she sought a continuance for time to obtain counsel). As asserted in Day's appellate arguments, Haeber's attorney was allowed to withdraw more than two months before the trial date, giving Haeber at least two months' notice that he needed to retain another attorney. Also, Haeber elected to hire an attorney ad litem to represent the children rather than hire an attorney for himself. Finally, Haeber does not explain how the circuit court's decision created any bias or prejudice against him. *See id*. (bias or prejudice is not presumed by appellate court). Accordingly, we affirm on this issue.

IV. *Attorney Ad Litem*

In his second point on appeal, Haeber asserts that the circuit court erred in forcing the parties into trial less than a week after appointing the attorney ad litem. Haeber contends that the court did not allow the ad litem sufficient time to understand the issues. He states that Administrative Order No. 15.1 sets forth the ad litem's standards of practice, which include conferring with the child, the child's parents and other caretakers, school personnel, and any other persons having relevant knowledge pertaining to the welfare and best interest of the child. The ad litem is to review all relevant documents, including medical, school, and court records. Haeber argues that this investigation should take longer than a week and that he was placed in a precarious position because he was acting pro se and relying heavily on the ad litem to be able to conduct all the responsibilities set out in Administrative Order No. 15.

We hold that Haeber's arguments regarding the attorney ad litem are not preserved for appeal. *T.S.B. v. Robinson*, 2019 Ark. App. 359, 586 S.W.3d 650. Haeber never argued that the case should be continued because of the timing of the appointment of the attorney ad litem. Haeber raised issues regarding the timing of the ad litem's appointment in his motion for new trial; however, an objection first made in a motion for new trial is not timely. *Cochran v. Bentley*, 369 Ark. 159, 176, 251 S.W.3d 253, 266–67 (2007).

V. *Attorney's Fees*

Finally, Haeber contends that the circuit court erred in awarding $3,000 in attorney's fees to Day. This court has stated,

> Although as a general rule, attorney's fees are not allowed in the absence of a statute permitting them, a circuit court has the inherent power to award attorney's fees in domestic-relations proceedings. *Hudson v. Hudson*, 2018 Ark. App. 379, at 6, 555 S.W.3d 902, 906. When awarding attorney's fees in a domestic-relations case, the court is not required to conduct an analysis using the *Chrisco* [*v. Sun Indus., Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990)] factors or make any particular findings. *Tiner v. Tiner*, 2012 Ark. App. 483, at 16–17, 422 S.W.3d 178, 187. Rather, in domestic-relations cases, where the court is intimately acquainted with the record and the quality of services rendered, we have held that the circuit court is in a better position than we to evaluate the services of counsel and observe the parties, their level of cooperation, and their obedience to court orders. *Hudson*, 2018 Ark. App. 379, at 7, 555 S.W.3d at 906. We will not disturb a circuit court's decision regarding attorney's fees absent an abuse of discretion. *Vice v. Vice*, 2016 Ark. App. 504, at 10, 505 S.W.3d 719, 725.

*Conley v. Conley*, 2019 Ark. App. 424, at 11, 587 S.W.3d 241, 247.

Haeber concedes that the circuit court had inherent power to award attorney's fees and that the amount awarded was within the circuit court's discretion. *Baber v. Baber*, 2011 Ark. 40, 378 S.W.3d 699. However, he contends that the circuit court must consider the

12

relative financial abilities of the parties. *Page v. Page*, 2010 Ark. App. 188, at 7, 373 S.W.3d 408, 411. He claims that he was at a disadvantage in this matter and that, despite having no attorney, there are no indications of his noncooperation, undue delay, or unnecessarily "running up" attorney's fees through pretrial discovery or trial conduct. He asserts that Day's motion for contempt was not granted and that she was not awarded all relief sought; thus, Day should be responsible for her own attorney's fees.

We hold that the circuit court did not abuse its discretion in awarding Day $3,000 in attorney's fees.[1] Haeber does not develop his contention that the circuit court must consider the relative financial abilities of the parties. Nonetheless, in determining a fee award, the relative financial ability of each party is a consideration, but it is not determinative. *James v. Walchli*, 2015 Ark. App. 562, at 8, 472 S.W.3d 504, 508. The circuit court was familiar with the parties' financial abilities, having considered their affidavits of financial means in December 2020. In its order denying Haeber's motion for new trial, the circuit court cited Haeber's ability to pay attorney's fees throughout the litigation.

Haeber's argument that Day was not the prevailing party fails for several reasons. There is no requirement that a party prevail in order to be awarded fees. *See Conley*, 2019 Ark. App. 424, at 11–12, 587 S.W.3d at 247–48. Nonetheless, Day prevailed on Haeber's motion to change custody. Also, supervised visitation was ordered for every visitation, and

---

[1]Day moved this court to dismiss the attorney's-fee portion of Haeber's appeal; however, having affirmed, we hereby hold that the motion is moot.

Haeber was ordered to attend counseling.  Accordingly, we disagree with Haeber's argument that Day did not prevail.  *See id.*

Affirmed.

KLAPPENBACH and HIXSON, JJ., agree.

*Harrelson Law Firm, P.A.*, by: *Steve Harrelson*, for appellant.

*Taylor & Taylor Law Firm, P.A.*, by: *Andrew M. Taylor*, *Sidney A. Stewart*, and *Tasha C. Taylor*, for appellee.