Cite as 2020 Ark. App. 236

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CV-19-446

|  |  |
|---|---|
| STEPHEN ALLEN HATHCOCK<br>APPELLANT<br><br>V.<br><br>TRACY YOUNG HATHCOCK (NOW SMITH)<br>APPELLEE | **Opinion Delivered:** April 15, 2020<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTEENTH DIVISION<br>[NO. 60DR-03-2911]<br><br>HONORABLE RICHARD MOORE, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

## PHILLIP T. WHITEAKER, Judge

Dr. Stephen Allen Hathcock appeals a Pulaski County Circuit Court order denying his amended motion to modify child support and challenges the circuit court's failure to strike appellee Tracy Young Hathcock's objections to his discovery requests and to compel discovery. We affirm the circuit court's decision on the discovery issue and reverse and remand on its denial of the amended motion to modify child support.

I. *Relevant Facts and Procedural History*

Stephen and Tracy were married in October 1994. Not long after Stephen and Tracy married, Stephen's grandmother, Mary Louise Hathcock, established the Mary L. Hathcock Revocable Trust (the Trust) in May of 1996 for the benefit of her two adult sons—Stephen's

father, Alfred, and his uncle, Charles. She funded the Trust primarily with interests in farm and timber land.[1] The Trust also contained a spendthrift provision which provided:

> 3.6. <u>Spendthrift Clause.</u>  To the extent permitted by law, no beneficiary of this Trust shall have the power to dispose of or to charge by way of anticipation any interest given, and all sums payable to any beneficiary shall be free and clear of his or her debts, contracts, disposition, pledges and anticipations, and shall not be taken or reached by any legal or equitable process in satisfaction thereof.

Mary died in September 1998. Alfred died approximately two weeks later, and under the terms of the Trust, was treated as though he had predeceased Mary. Alfred's share of the Trust then passed to Stephen and his sister, Lisa.

The Trust was administered primarily for the benefit of Charles. Each year, the third-party trustee ensured that Charles's needs were met; the Trust even allowed for the invasion of principal for Charles's support and maintenance. To the extent there were any funds remaining, the trustee could distribute those funds equally between Stephen and Lisa.  On average, Stephen and Lisa each received approximately $10,000 a year in trust income.

In February 2004, Stephen and Tracy divorced. In the decree, they agreed that they would share joint legal custody of their two minor children, SH and CH, with Tracy retaining primary physical custody. They further agreed that Stephen would pay directly to Tracy $1000 a month in child support[2] and maintain a medical savings account for the

---

[1]Some of the interests were direct and some were the result of owning minority interests in limited partnerships or limited liability companies.

[2]The amount agreed on by the parties was not based on a precise calculation of Stephen's net income pursuant to the child-support chart. The parties agreed that any future modification would not be barred by either party's inability to demonstrate a material change of circumstances. Absent a future modification, Stephen's child-support obligations would continue until SH reached age eighteen or graduated from high school, whichever occurred last. At that point, absent a requested review of the remaining support obligation, support

medical and other health-related expenses of the children. We are unclear on the record before us if any income that Stephen received from the Trust was included in calculating the award of child support set forth in the divorce decree entered in 2004.

While the issues on appeal pertain to child support and discovery, Stephen's and Tracy's property awards from the divorce decree are relevant to the arguments on appeal. Each was awarded an interest in certain trusts as separate nonmarital property. Specifically, Tracy was awarded her interest in the Vivian C. Young Testamentary Trust, and Stephen was awarded his interest in the Mary L. Hathcock Revocable Trust and the Alfred B. Hathcock Insurance Trust.

The parties returned to court in the fall of 2009 after Stephen accepted a position at a hospital and moved to New Hampshire.[3]  In an August 2010 order, the court modified child support to $2,0003.60 a month on the basis of Stephen's change of employment and improved financial situation. Additionally, the court ordered Stephen to pay Tracy as child support 21 percent of any net income he received over and above his regular salary and to provide her with his federal and state income tax returns, including all schedules, within ten days of the date the returns were mailed to the IRS or the state revenue authority.

Again, we are unclear on the record before us if the trust income received by Stephen was included in the court's 2010 order that he pay 21 percent of any net income received

was to be automatically adjusted pursuant to the provision of Arkansas Code Annotated section 9-14-237 until CH reached age eighteen or graduated high school, whichever occurred last.

[3]The move was strictly for economic reasons.

3

over and above his regular salary.[4] Tracy obviously thought that it was included because she subsequently filed a motion for wage assignment arising from a disagreement as to the amount and timing of the trust-related child–support payments. In May 2012, Stephen and Tracy entered an agreed order that specifically addressed the payment of child support on disbursements Stephen received from the Mary L. Hathcock Revocable Trust. The order provided in pertinent part:

> 1. This Court orders the trustee of the Mary Louise Hathcock Revocable Trust ("Farm Trust") to send Tracy Young Smith's account at the Office of Child Support Enforcement an amount deducted from any *disbursement* made to Stephen Allen Hathcock calculated as follows. Subtract 33% of the *disbursement* amount from the amount disbursed to Stephen Hathcock (the "net amount"). (This is the approximate tax liability owed by [Stephen] for that *disbursement*). Then pay to Tracy Young Smith's account at the Office of Child Support Enforcement, 21% of the net amount.

> 2. When [Stephen] files his annual income tax return if [Stephen] has overpaid child support attributable to the Farm Trust disbursement he will notify [Tracy] of the overpaid amount with accompanying proof of overpayment and [Tracy] will promptly reimburse [Stephen] for such overpaid amount. If [Stephen] has underpaid child support attributable to the Farm Trust disbursement, [Stephen] will promptly pay [Tracy] the amount of underpayment with accompanying proof of underpayment.

(Emphasis added.) After the entry of the May 2012 order, Stephen paid Tracy child support on the income he received from the Mary L. Hathcock Revocable Trust.

In 2014, Stephen returned to Arkansas from New Hampshire. In March 2015, Stephen filed a motion to reduce child support on the basis of the reduction of his salary commensurate with the relocation back to Arkansas. While that motion was pending before

---

[4]The trust income was not specifically identified in the August 2010 order.

4

the court, Stephen's uncle, Charles, died.[5] His death triggered the termination of the Trust. The trustee began the process of dissolving the Trust, including adjusting the values of the trust assets to their date-of-death value. Lisa, Stephen's sister, continued to get distributions from the Trust.[6] Stephen did not.

On December 2, 2015, Stephen filed an amended motion to reduce child support requesting the court to declare that funds inherited from the Trust were not "disbursements" from the Trust and therefore were not subject to the 21 percent child-support provision of the May 2012 agreed order. In the alternative, Stephen requested that if the funds were declared disbursements under the May 2012 agreed order, the agreed order be modified so as to prevent a windfall over and above the reasonable needs of the children.

On December 3, 2015, the circuit court entered an agreed order concerning Stephen's March 2015 motion to modify. In accordance with the parties' agreement, the court in the agreed order directed Stephen to pay $14,994.96 in arrearages, plus medical bills and attorneys' fees, and modified the May 2012 child-support order to $1,891 a month. The court reserved and did not rule on the issues contained in the December amended motion.

The parties engaged in lengthy and protracted discovery, including the retention of expert witnesses by both sides. Stephen objected to Tracy's responses to his requests for interrogatories, alleging that her "boilerplate" and "general" objections and her reservation

[5]Charles died in June 2015.

[6]She received $5,000 on July 24; $3,000 on August 6; $5,000 on September 30; $2,000 on November 13; and then a larger disbursement of $582,000 on November 19.

5

of rights to each of his discovery requests were improper and prevented him from ascertaining the true nature of her objections and made it difficult to ascertain whether all requested information had been properly produced. The circuit court ultimately overruled Stephen's objections and denied his motion to compel.

The court conducted a hearing on the motion to amend in April 2018, hearing testimony and receiving evidence from Stephen, Tracy, Cheryl Shuffield—Stephen's expert, and Steve Shroeder—Tracy's expert. The parties also filed posttrial briefs in which significant attention was paid to the definition of "disbursement" as contemplated in the 2012 agreed order.

Stephen asserted that the parties intended for the term disbursement to encompass only distributions of income he received from the Trust, not distributions of corpus. He pointed to the testimony of his expert that the term "disbursement" has a specific meaning in accounting parlance, that it designates a "cash payment," and that a distribution of property would not constitute a disbursement. Thus, the court should strictly construe the terms of the 2012 agreed order to exclude disbursements made to him upon the dissolution of the Trust and from his inheritance from the estate of his uncle Charles Hathcock. Alternatively, Stephen argued that if the court disagreed, the award should be modified to prevent a windfall over and above the reasonable needs of the children.

Tracy argued that the 2012 agreed order was an independent contract between her and Stephen that could not be modified by the court. She disagreed with Stephen and argued that the 2012 agreed order applied to disbursements of any kind, whether it be income, corpus, or inheritance, which was contemplated by the parties' independent

contract. She pointed to the testimony of her expert that disbursements included all moneys transferred out of the Trust to the beneficiaries, whether in cash or in kind. She also argued that the 2012 order did not state that the disbursements had to be taxable income or cash disbursements. Concerning the alternative argument, Tracy took the position that the 2012 order did not indicate that it was subject to the reasonable needs of the children. If the court did consider the reasonable needs of the children, she argued that her testimony regarding the expenses of the children was enough to avoid any windfall.[7]

On November 14, 2018, the court issued a letter opinion. We recite the relevant portions of this letter opinion that pertain to the issues on appeal.[8] The letter opinion provided:

> The first question before the Court is whether [Stephen's] Amended Motion to Reduce Child Support was filed in a timely manner to allow modification of the May 2012 Agreed Order, if so, if the Agreed Order entered into by the parties and filed with the Court in May of 2012 is modifiable. Pursuant to the testimony presented to the Court, the trust at issue in this matter was dissolved on or about November 19, 2015. [Stephen] then filed an Amended Motion to Reduce Child Support on or about December 2, 2015, requesting that the previously entered Agreed Order, dated May 30, 2012, be modified and arguing that the dissolution of the trust should not be considered a disbursement for purposes of the Agreed Order, or, in the alternative, if the Court does find that there is a disbursement, that the

---

[7]At the time of the hearing, SH was twenty years old and CH was almost eighteen.

[8]The court also addressed the distribution of proceeds from the sale of certain properties (the Main Street properties), and whether they should be considered a trust disbursement, subject to the "21%" formula, or if the proceeds of said sale should be considered part of Stephen's inheritance from his uncle and thus subject to the application of the support chart. The circuit court found that the proceeds from the sale of the Main Street Properties constituted an inheritance from his uncle and could be considered as income for purposes of calculating child support pursuant to the child–support chart. Stephen does not challenge the circuit court's ruling in this regard.

Order should be modified so that [Tracy] does not receive a windfall that would be significantly more than the needs of the children.

The court finds that the dissolution of the trust is considered a disbursement for purposes of the May 2012 agreed order. Further, the Court finds that the dissolution of the trust occurred on or about November 19, 2015, and Plaintiff's Motion regarding modifying the Agreed Order was not filed until December 2, 2015. The law in Arkansas is clear that child support cannot be modified prior to the date that a Motion is filed with the Court. Rogers v. Rogers, 90 Ark. App. 321 (2005). As a result of the fact that the Amended Motion was filed after the Plaintiff's interest in the disbursement attached it is unnecessary for the Court to address the issue of whether or not the May 2012 Agreed Order is modifiable, or the alternative "needs of the children" argument.

. . . .

The Court requests that [Tracy's counsel] prepare an Order expressing and incorporating the Court's Letter Opinion and transmit same to [Stephen's counsel] for his review.

A formal order was entered on February 7, 2019. Contrary to the court's express direction, the formal order did not reference or incorporate the court's letter opinion; nor did it express the reasons for the court's opinion. It simply denied the motion and calculated the child support due and owing. We, however, can look to the letter opinion to discern the circuit court's reasoning when there is a gap in the order. *See T & S Mach. Shop, Inc. v. KD Sales*, 2009 Ark. App. 836, at 4–6, 372 S.W.3d 410, 412–14.

Stephen appeals arguing that the circuit court erred (1) in finding his motion untimely; (2) in failing to consider the reasonable needs of the children in determining an appropriate award of support; (3) in failing to consider the effect of the spendthrift provision of the Trust; and (4) in overruling his complaints about discovery.

8

II. *Analysis*

Our standard of review for an appeal from a child-support order is de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Morgan v. Morgan*, 2018 Ark. App. 316, at 6, 552 S.W.3d 10, 15 (citing *Hall v. Hall*, 2013 Ark. 330, 429 S.W.3d 219). In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.*, 552 S.W.3d at 15. As a rule, when the amount of child support is at issue, we will not reverse the circuit court absent an abuse of discretion. *Id.* at 6–7, 552 S.W.3d at 15. However, a circuit court's conclusion of law is given no deference on appeal. *Id.* at 7, 552 S.W.3d at 15.

Stephen first argues that the circuit court erred in concluding that his motion to modify was untimely. Stephen is correct. The circuit court found that the Trust dissolved on or about November 19, 2015, and that the Trust dissolution is considered a disbursement for purposes of the 2012 agreed order. We disagree.

The 2012 agreed order provided that child support was to be deducted from "any disbursement" made "to" Stephen. The court found the dissolution of the trust to be a disbursement for purposes of the 2012 agreed order. However, the experts testified that disbursements are the payments of cash and/or the transfer of property to the beneficiary from the Trust. Thus, while Stephen's interest in the corpus of the Trust may have been triggered by the death of Charles and the termination of the Trust, nothing was actually transferred to him at that time; accordingly, under the terms of the agreement, there could be no disbursement for purposes of calculating child support on the date of Charles's death.

Inexplicably, the court found that the Trust dissolved on November 19, 2015—the date Lisa received a large distribution from the Trust—not the date of Charles's death. Additionally, that distribution was a distribution to Lisa, not Stephen, and the 2012 agreed order speaks in terms of disbursements made to Stephen from the Trust. Thus, the circuit court's determination that the Trust dissolved on this date was in error, as was its conclusion that Stephen received a disbursement on that date. In fact, the record clearly shows that Stephen did not receive a distribution of any kind from the Trust until after the filing of his December 2, 2015, amended motion.[9] Under the terms of the 2012 agreed order, Stephen's obligation to pay support only materialized when a disbursement had been made. To the extent these distributions are found to be disbursements from the Trust for purposes of calculating child support under the agreed order, they did not occur until after Stephen's amended motion had been filed. Thus, the court's conclusion that the motion was untimely was in error.

Because it found the motion to modify was untimely, the circuit court found it unnecessary to consider Stephen's "needs of the children" argument[10] or whether the agreed

---

[9]The record reflects that Stephen received a $95,779.99 distribution on December 21, 2015 ($25,779.99 in farm income and $70,000 in proceeds from the sale of real estate). On that date, the Trust also set aside $81,887 for Stephen's potential payment of child support, which equals the child support due based on the distribution amount paid to Lisa in November 2015 less Stephen's potential tax liability. He received a beneficiary distribution of $415,000 on March 9, 2016, and $85,000 on March 31, 2016. Stephen received additional distributions of $8,636, capital stock and in-kind distributions totaling approximately $1,319,595, and $63,880 from the sale of the Main Street properties; all of these additional distributions were received in 2016.

[10]We note that child support is not a mechanism to provide for the accumulation of capital by children but is to provide for their reasonable needs. *See Smith v. Smith*, 341 Ark. 590, 596, 19 S.W.3d 590, 594–95 (2000). The court has a duty to exercise its discretion in

order could be modified by the court. The court further failed to address what effect, if any, the spendthrift provisions of the Trust had on the Stephen's agreement to pay child support on his disbursements from the Trust. The court also failed to address Stephen's argument that the term "disbursement" as used in the agreed order was not intended by the parties to apply in this situation but was instead intended to apply only to "income" Stephen received from the Trust on an annual basis. As a result, we must remand for the court to consider these issues.

Finally, Stephen argues that the circuit court erred in allowing Tracy to provide boilerplate or general objections to his discovery requests. He claims that if these objections are allowed to stand, he has no way of knowing whether all information that has been requested has been produced or whether information has been withheld as a result of the general objections.

Circuit courts have wide discretion in all matters pertaining to discovery, and we will not reverse their decisions absent an abuse of discretion that is prejudicial to the appellant. *Heinrich v. Harp's Food Stores, Inc.*, 52 Ark. App. 165, 915 S.W.2d 734 (1996). Under the circumstances revealed by the record, we cannot say that the court abused its discretion in overruling Stephen's objection to Tracy's responses to his discovery requests. The circuit court questioned counsel extensively as to his objection to the responses. The court stated

---

every case to ensure that the award is necessary to provide for the reasonable needs of the children. *Grimsley v. Drewyor*, 2019 Ark. App. 218, 575 S.W.3d 636. However, we express no opinion as to whether the parties may agree to a greater award or whether any such agreement was contemplated in this case.

11

that it was its understanding that if a party makes a general discovery objection and then the opposing party answers, the objecting party waives the objection. The court noted that although Tracy generally objected to the requests, she then proceeded to give detailed answers to the questions asked. When asked, Stephen's counsel could not point to any particular answer that was deficient. The circuit court considered Stephen's arguments and found the discovery responses to be sufficient. That was not an abuse of discretion.

Affirmed in part; reversed and remanded in part.

GRUBER, C.J., agrees.

HARRISON, J., concurs.

**BRANDON J. HARRISON, Judge, concurring**. I agree that we must reverse the circuit court's decision that Stephen's motion to modify his child-support obligation was untimely filed. It was timely. Although I join the decision to reverse the appealed order and remand for further proceedings, I do so for an additional reason. My colleagues state that the "circuit court found it unnecessary to consider . . . whether the agreed order could be modified by the court." I believe the circuit court has already acted on the agreed order. And to the extent the circuit court determined that the 2012 agreed order alone settled Stephen's child-support obligation, it erred.

The challenged order in this case states (in part) that Stephen must pay $144,123.50 to the Office of Child Support Enforcement "[p]er the provisions of the Agreed Order dated May 30, 2012." That directive runs afoul of Arkansas's child-support law in general. It does so because the amount the court awarded in child support was the precise amount that Tracy said Stephen had "contracted" to pay in the 2012 agreed order. But the agreed

order cannot in and of itself control the outcome of the child-support question this record presents.

A circuit court is not bound by an agreed order or an independent contract regarding the amount of child support one must pay. We so recognized as recently as two weeks ago in *Callan v. Callan*, 2020 Ark. App. 205, 599 S.W.3d 145. In *Callan*, this court held that the circuit court was not bound by the parties' "earlier contractual agreement" because "the circuit court always retains jurisdiction over child support as a matter of public policy, no matter what an independent contract states." *Id*. at 6 n.2, 599 S.W.3d at 149 n.2. Nor do I believe that a circuit court is bound by an agreed order that purports to definitively determine which *sources* of money are "income" for child-support-calculation purposes. Finally, in a similar vein, parties cannot render a circuit court mute regarding whether an agreed upon *amount* of support is enough under Arkansas law. As we have recently written:

> [P]arties cannot with any security enter into agreements regarding child support that vary by even a small amount from [Administrative Order No. 10] . . . . Although there are numerous reasons why parties would enter into such agreements, counsel for such parties should consider setting out in the support order reasons for the variance that would constitute a 'rebuttal' of the chart and obtaining the approval of the circuit court before entering into such agreements in the future.

*See Higdon v. Roberts*, 2020 Ark. App. 59, at 7–8, 595 S.W.3d 19, 24–25 (internal citations and quotations omitted).

Child support is always modifiable if there is a showing of a change in circumstances. *Roark v. Office of Child Support Enf't*, 101 Ark. App. 382, 278 S.W.3d 114 (2008). When a circuit court determines whether there has been a material change in circumstances it must probe whether the alleged change is based on facts that were known (or knowable) to the

13

parties and the court when the initial support order was entered. *Troutman v. Troutman*, 2017 Ark. 139, 516 S.W.3d 733. The threshold question in this case, which has not yet been decided, is whether Stephen has shown a material change in circumstances since the agreed order was entered in 2012. Stephen timely alleged that a material change in circumstances had occurred between the entry of the 2012 order and his March 2015 motion to reduce child support. The March motion was amended by his December 2 motion; the latter of which asked the court to decide whether Stephen's inheritance from Charles was "income" for child-support purposes. Though it is not crystal clear, the court's order appears to have accepted Tracy's argument regarding the legal effect of the agreed order instead of applying all the usual steps when determining whether a present child-support obligation should be modified.

★ ★ ★

On remand, the circuit court must decide whether a material change in circumstances has occurred since Stephen's 2012 support obligation was set. Regardless, the agreed order cannot legally bind the court when deciding whether Stephen's inheritance from his uncle is a source of income for child-support purposes, and if it is, what amount of the inheritance can be used when calculating Stephen's support obligation.

*Wagoner Law Firm, P.A.*, by: *Jack Wagoner III*, *Bruce Tennant*, and *Carmen Mosley-Sims*, for appellant.

*LaCerra, Dickson, Hoover & Rogers, PLLC*, by; *Traci LaCerra*, for appellee.