Cite as 2021 Ark. App. 415

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-20-668

|  |  |  |
|---|---|---|
| | | **Opinion Delivered** October 27, 2021 |
| LESHAY MORRIS (EVERSOLL) | | |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTEENTH DIVISION |
| V. | | [NO. 60DR-09-2862] |
| JOHN MORRIS | | |
| | APPELLEE | HONORABLE MACKIE M. PIERCE, JUDGE |
| | | AFFIRMED |

## MIKE MURPHY, Judge

The appellant, LeShay Morris (now Eversoll), appeals from the order of the Pulaski County Circuit Court changing custody of the three children born during her marriage to appellee, John Morris. On appeal, LeShay argues the circuit court erred by (1) finding that a material change existed such that a change in custody was warranted, (2) finding that it was in the children's best interest to change custody to Morris, and (3) setting and calculating her child-support obligation. We affirm.

LeShay and John were married in 2004 and divorced in June 2011. That decree awarded physical custody of the children to LeShay and visitation to John. LeShay remarried in 2012. In March 2017, LeShay filed motions asking that the court find John in contempt for failure to pay child support and to suspend his visitation because of safety concerns for

the youngest child, CM, who has special needs. An ad litem was appointed, and in October 2017, a temporary agreed order was entered setting visitation pending a hearing.

On January 22, 2018, the ad litem filed an ex parte motion for a temporary, immediate change of custody of the minor children from LeShay to John. The motion alleged that the two older children (then ages 12 and 11) witnessed severe physical abuse of CM, that one of the older children had been hit in the mouth (causing bleeding), and they were afraid to be in care due to threats of harm and alcohol abuse by both her and her husband, Michael. The circuit court granted the emergency ex parte change of custody. John then moved for a change of custody. Another temporary agreed order followed that placed custody of the minor children with John, suspended his child-support obligation, and held in abeyance "any request for [LeShay] to pay child support" pending a final hearing.

At the February 20, 2020 hearing on John's motion to change custody, LeShay testified that she knew about the allegation that her husband, Michael, had hit one of the children in the mouth but that she had not ever witnessed Michael physically abuse or discipline the children. She testified further that she had separated from Michael and planned to divorce him; Michael had moved out of her house about two months prior to the hearing. LeShay admitted that she had not attended a complex-care appointment for CM in over two years.

John testified that the children have done very well since entering his care. He and the two older children have attended counseling, the children are doing well in school, and everyone, including CM, is involved in multiple extracurricular activities. Furthermore, CM was thriving. He was receiving care in John's custody he was not receiving with

LeShay. John had CM's teeth fixed and took him to an orthopedist. Before John received custody, CM could not stand, relied on a feeding tube, and weighed only thirty pounds. While in John's custody, CM progressed to walking some with a walker and eating by mouth. By the time of the hearing, CM weighed seventy pounds.

The ad litem also addressed the court:

> Your Honor, I'm going to get to my recommendation. Which really, to be quite honest with you is more of kind of sitting middle of the fence and I hate to say that to the Court, but, you know, while I think both of these parties have very real short comings, I have to go back to my one fear of safety for the children. And it isn't necessarily that I think the children are unsafe with [LeShay], it's just I do believe, at one point in time, the children had true fear for safety and that came about physically. And I am going to listen to what the children were telling me at that time to what I saw with the children at that time with Michael and I do have very real concerns about the decision-making ability to have him remain in the home for so long until right before we go to court.

The court awarded John custody. In the ensuing order, it wrote that

> [b]oth parents have significant shortcomings, and this is noted by the Attorney ad Litem in her report. It is clear however, the shortcomings of [LeShay] are significantly greater than those of the [John]. It is abundantly clear to this court [John] has done more for their disabled child in the short time period he has had custody than ever was done by [LeShay]. It is significant, since the issue of child support was reserved in the Agreed Temporary Order of January of January 31, 2018, [LeShay] has paid no child support of any kind to [John] for the care of the children.

> The court finds it is in the children's best interest for their permanent care and custody to be awarded to [John], subject to visitation by [LeShay] . . . .

LeShay was ordered to pay child support in the amount of $106 a week from the date of the temporary agreed order placing the children in John's custody—a backpay period of 107 weeks. The arrearages totaled $11,342. LeShay appeals, arguing that the circuit court erred in changing custody and setting her child-support obligation.

In reviewing child-custody cases, we consider the evidence de novo, but we will not reverse the circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *McNutt v. Yates*, 2013 Ark. 427, at 8, 430 S.W.3d 91, 97. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Boudreau v. Pierce*, 2011 Ark. App. 457, 384 S.W.3d 664.

It is well settled that the primary consideration is the welfare and best interest of the child, while other considerations are merely secondary. *McNutt, supra.* We give special deference to the superior position of the circuit court to evaluate and judge the credibility of the witnesses, and this deference to the circuit court is even greater in cases involving child custody, as a heavier burden is placed on the circuit court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Id.*

For her first point, LeShay argues that the circuit court erred in finding that there was a material change in circumstances sufficient to warrant the modification of custody. We impose more stringent standards for modifications in custody than for initial determinations to promote stability and continuity in the life of the children. *Id.* at 9, 430 S.W.3d at 97. This also discourages repeated litigation of the same issues. *Id.* The party seeking modification of the custody order has the burden of showing a material change in circumstances. *Ellington v. Ellington*, 2019 Ark. App. 395, 587 S.W.3d 237. In order to change custody, the circuit court must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is

4

met, it must then determine who should have custody, with the sole consideration being the best interest of the children. *Davis v. Sheriff*, 2009 Ark. App. 347, at 5, 308 S.W.3d 169, 172. Determining whether there has been a change of circumstances requires a full consideration of the circumstances that existed when the last custody order was entered in comparison to the circumstances when the change of custody is considered. *Carver v. May*, 81 Ark. App. 292, 101 S.W.3d 256 (2003).

LeShay first argues that the circuit court failed to make a specific finding that a material change in circumstances occurred since the last custody order. She is correct. However, when the circuit court fails to make findings of fact about a change in circumstances, this court, under its de novo review, may nonetheless conclude that there was sufficient evidence from which the circuit court could have found a change in circumstances. *Geren Williams v. Geren*, 2015 Ark. App. 197, at 10, 458 S.W.3d 759, 766. Here, there was evidence that CM was not receiving the quality of care in LeShay's custody that he required. John got CM's eyes checked for the for the first time "in a long time," John arranged for CM to see an orthopedist, and CM was able to graduate from a feeding tube to eating by mouth in John's care. Additionally, there was evidence that LeShay learned about abuse allegations against Michael toward the children, yet she continued to allow him in the home and to be around her children despite a temporary agreed order that provided that these were serious allegations that needed to be addressed. LeShay's failure to adequately care for CM and take seriously the allegations of abuse is sufficient to be considered a material change in circumstances.

For the same reasons, we also disagree with LeShay's next contention, which is that the circuit court erred in finding that a change of custody was in the children's best interest. LeShay argues that the circuit court reached its best-interest conclusion on the basis of two findings, neither of which have any bearing on the determination of the best interest of the children: (1) that John had done more for CM than she had and (2) that she had not paid any child support since John obtained temporary custody of the children in 2018. However, there is no exhaustive list of factors that a court must consider when analyzing the best interest of the child. *Westin v. Hays*, 2017 Ark. App. 128, 513 S.W.3d 900. The primary consideration in child-custody cases is the welfare and best interest of the children. *Dorrell v. Dorrell*, 2014 Ark. App. 496, 441 S.W.3d 925. The order itself stated that the court's findings were based on the testimony, arguments, recommendations of the ad litem and the exhibits. It found that both parents had significant shortcomings but that "it is in the children's best interest for their permanent care and custody to be awarded to [John]."

On a de novo review, this best-interest finding is not clearly against the preponderance of the evidence. Nor are not left with a definite and firm conviction that a mistake has been made. CM's better access to care with his father and LeShay's casual treatment of the child-abuse allegations support the best-interest finding.

Finally, LeShay argues that the circuit court erred in setting her child support. She does not argue that the court erred in awarding support but instead contends that the circuit court used the wrong chart to set the weekly amount owed. She then argues that she should have been awarded a credit for unpaid child support owed by John.

6

When the amount of child support is at issue on appeal, we will not reverse a circuit court's order absent an abuse of discretion. *Hathcock v. Hathcock*, 2020 Ark. App. 236, at 9, 599 S.W.3d 704, 709. An abuse of discretion generally occurs when the circuit court's discretion is applied thoughtlessly, without due consideration, or improvidently. *Vice v. Vice*, 2016 Ark. App. 504, at 6, 505 S.W.3d 719, 723.

In determining a reasonable amount of support—either initially or on review—to be paid by the noncustodial parent or parents, circuit courts are required to refer to the most recent revision of the family support chart. Ark. Code Ann. § 9-14-106(a)(1)(A) (Repl. 2020). That chart is found in Administrative Order No. 10, which was revised in 2020. The revised version was adopted on April 2, 2020, and provided that "[e]ffective immediately, the new guidelines may be used as an alternative to the previous version of Administrative Order No. 10. The new guidelines shall be used for all support orders entered after June 30, 2020." *In re Implementation of Revised Admin. Ord. No. 10*, 2020 Ark. 131, at 1 (per curiam). Here, the hearing was held in February 2020, well before the new guidelines were implemented. And while the final order was not entered until July 28, 2020, the argument that the newer calculation guidelines should be applied was not made to the circuit court prior to the entry of that order. *See generally Myers v. McCall*, 2009 Ark. App. 541, 334 S.W.3d 878 (holding that we will not address arguments on appeal that were not first brought to the attention of the circuit court). Accordingly, it was not an abuse of discretion to use the child-support guidelines in effect at the time of the hearing on the matter.

Last, LeShay argues that the circuit court failed to give her credit toward her arrearages for any unpaid child support owed by John. At the hearing, she introduced a

letter from the Office of Child Support Enforcement dated November 3, 2019, stating that John owed back child support in the amount of $3,682.45. That letter was dated, however, after John had obtained custody. If LeShay had wanted an offset, she should have asked the court to calculate the amount of back support owed to her at the time of the February 2020 hearing and then asked for it to be applied as an offset in the event the court changed custody.

Even so, just because LeShay did not get a credit or an offset toward her arrearages does not automatically mean that she is not entitled to some amount in the event John owed her money when he obtained primary custody of the children. Put another way, LeShay's right to collect back support, if indeed there was any owed to her, was not forfeited. *See* Ark. Code Ann. § 9-14-234(c)(1) (Repl. 2020) ("The court may not set aside, alter, or modify any decree, judgment, or order that has accrued unpaid support prior to the filing of the motion."). The court did not abuse its discretion in setting and awarding child support.

Affirmed.

GLADWIN and BROWN, JJ., agree.

*Ballard & Ballard, P.A.*, by: *Andrew D. Ballard*, for appellant.

*Taylor & Taylor Law Firm, P.A.*, by: *Jennifer Williams Flinn*, *Andrew M. Taylor*, and *Tasha C. Taylor*, for appellee.