Cite as 2023 Ark. App. 410

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-22-437

| | | |
|---|---|---|
| TODD ARMSTRONG | | Opinion Delivered September 27, 2023 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTEENTH DIVISION [NO. 60DR-18-1532] |
| V. | | |
| HAYLEY KEETON | | HONORABLE MACKIE M. PIERCE, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**RITA W. GRUBER, Judge**

Todd Armstrong appeals three March 21, 2022 orders and one April 7 order of the Pulaski County Circuit Court, but he makes arguments regarding only the April order modifying his child-support obligation. He raises three points on appeal: (1) the circuit court erred as a matter of law when it utilized incomplete data to arrive at his 2021 income; (2) the circuit court's ultimate calculation of his income for child-support purposes was clearly erroneous; and (3) his modified child-support obligation should have been made retroactive to April 29, 2020. We affirm.

I. *Factual and Procedural Background*

On August 13, 2019, the circuit court entered a divorce decree placing primary custody of three minor children (MC1, MC2, and MC3) with their mother, appellee Hayley Keeton, rather than their father, Armstrong, who was awarded standard visitation. Pursuant

to the decree, Armstrong, a real estate agent and broker, was ordered to pay $1636 monthly in child support for all three children, commencing September 1.[1] On January 15, 2020, per the agreement of the parties, MC1 began living with Armstrong. On April 29, Armstrong filed a motion requesting full custody of MC1 and a child-support modification given the change in custody. Armstrong specifically requested that the revised Administrative Order No. 10 (Admin. Order 10)[2] be considered when calculating his new child-support obligation. The motion made no request that the modification be retroactive.

A hearing on the motion was held on October 11, 2021. Keeton introduced the 2019 and 2020 tax returns of TAP Real Estate, Inc. (TAP), reflecting that Armstrong was president and sole owner of TAP, an S corporation. The 2019 TAP tax return reflected $67,247 in "gross sales" and "total income"; $40,243 in deductions, which included automobile and truck expenses, 50 percent of meals, and office expenses; and a resulting "ordinary business income" of $27,004. The 2020 TAP tax return reflected $193,867 in "gross sales" and "total income"; $10,000 in salaries and wages; and $102,885 in deductions, which included automobile and truck expenses, 100 percent of meals, and office expenses; and a resulting "net income" of $79,990. Keeton also introduced a "1099 Transaction Detail Report"

---

[1]The child support was calculated under the payor/payee method that was utilized in Administrative Order No. 10 at that time.

[2]As of April 2, 2020, use of the revised Administrative Order No. 10 rather than the previous version of Administrative Order No. 10 was permitted. Use of the new guidelines was required for all support orders entered after June 30. *In re Implementation of Revised Admin. Ord. No. 10*, 2020 Ark. 131, at 1 (per curiam).

generated by Luxury Real Estate, LLC, for Armstrong dba Tap Real Estate, Inc., for 2021 (1099 TDR-2021), reflecting income and expenses from October 2020 through October 2021. Armstrong made no objections regarding the TAP tax returns or the 1099 TDR-2021.

In contrast, Armstrong submitted his affidavit of financial means, which was supported by his individual 1040 federal tax return for 2019,[3] which reflected $27,004 in "other" income; $1000 in wages, salaries, tips; $28,004 in adjusted gross income; combined deductions of $15,361; and a resulting taxable income of $12,643. Armstrong also submitted his individual 1040 federal tax return for 2020, which reflected $83,794 in "other" income; $10,000 in wages, salaries, and tips; $93,794 in adjusted gross income; $33,679 in combined deductions; and a resulting taxable income of $60,115. Armstrong also introduced a piece of paper with several handwritten calculations, including a handwritten notation reflecting "2021 Year to Date Income" of $233,866.52. No objections were raised to the admission of those exhibits.

The court informed the parties that it was going to use the "shared-income approach" to calculate the child-support obligations, which utilized the gross income of both parents, per Admin. Order 10. The court explained that Admin. Order 10 gave it "guidelines" on what it was to presumptively follow, but it had discretion. The court acknowledged that it was not sure how it was going to make its calculations, but it would do what it thought equitable under the circumstance and counsel were welcome to argue that its calculations

---

[3]As part of the same exhibit, Armstrong submitted his individual state income tax returns as well, which reflected the same income information as the federal tax returns.

were incorrect and why. Regarding the retroactive application of the modified child-support amount, the court explained that it could only act from the date of the motion forward and when to set the cutoff was discretionary. At the conclusion of the hearing, the court specifically stated, "Well, I'll leave it at that, unless you-all have anything else," to which Armstrong's counsel replied, "No, Your Honor." The court then set a two-week deadline for the parties to submit briefs regarding what each proposed the child-support obligations should be and asked each side to submit the child-support worksheet.

Armstrong's letter brief set out that based on his affidavit of financial means, his 2019 monthly gross income was $2333, and his 2020 monthly gross income was $5000, which returned an average monthly gross income of $3666.50. Those amounts were extrapolated from Armstrong's personal income-tax records only. Armstrong's brief makes no mention of his 2021 income. Armstrong argued that the modified child-support obligation should be made retroactive to when he initially filed his motion—April 29, 2020—pursuant to Ark. Code Ann. § 9-14-107(d) (Supp. 2023).

Keeton's brief set out the requirements of Admin. Order 10 and addressed Armstrong's gross income in relation to it. She asserted that pursuant to the section of Admin. Order 10 that addresses the way a self-employed individual's gross income is to be calculated, the court should use the TAP tax records as reflective of Armstrong's actual gross income for 2019 and 2020. Armstrong contended that Admin. Order 10 required that deductions made for automobile and truck expenses, meals, and office expenses within the 2019 and 2020 TAP records had to be added back to Armstrong's gross income. Specific to

4

2020, Keeton added those types of deductions back, subtracted other deductions permitted by Admin. Order 10, and arrived at a gross income flowing through TAP. Keeton then combined the TAP income, Armstrong's personal income, and his unemployment compensation, which resulted in a gross income of $151,044. Keeton made the same type of calculations for 2019, which resulted in a gross income of $40,882.00. Keeton then utilized the 1099 TDR-2021 to arrive at a 2021 gross income of $145,973 for Armstrong. She did so by taking the gross commissions that Armstrong had received in 2021, less 2021 expenses, plus property-management fees. Keeton then calculated that Armstrong's monthly gross income was $10,080.71. Regarding the retroactivity of the modified child-support obligation, Keeton argued that the request should be denied because Armstrong did not initially ask for retroactive child support in his April 29, 2020 motion, did not ask for a hearing on the motion until August 2021, and came to the court with unclean hands.

The order at issue was entered on April 7, which reflected a child-support obligation for Armstrong of $1081.41. The court incorporated a "Calculation Sheet and a Child Support Worksheet" into the order. The calculation sheet reflected that Armstrong's gross income was based on "2019 tax return, 2020 tax return" and the 1099 TDR-2021, with automobile, meal, and office deductions added back to gross earnings, per Admin. Order 10, subsection 3(i). The calculation sheet also reflected Armstrong's gross income was $40,882 for 2019; $151,044 for 2020; and $145,973 for 2021. It further set out an average gross income of $11,263.30 for Armstrong. The court then applied each party's gross income to the Arkansas child-support worksheet to determine each party's child-support obligation.

The court offset Armstrong's child-support obligation to Keeton for MC2 and MC3 by the amount of Keeton's child-support obligation for MC1. The court determined that Keeton's child-support obligation for MC1 would be retroactive to the date of the hearing—October 11, 2021—rather than the date of the filing of the motion—April 29, 2020—as Armstrong had requested. It then directed the parties to determine the amount that Armstrong had overpaid in child support beginning October 11, ordering that Armstrong's child-support obligation moving forward would be reduced $100 per month until the overpayment was fully reimbursed to him. This timely appeal followed.

## II. *Standard of Review*

Our standard of review for an appeal from a child-support order is de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Cathey v. Altazan*, 2023 Ark. App. 314, at 5, 669 S.W.3d 614, 617. However, a circuit court's conclusions of law are given no deference on appeal. *Id.* at 6, 669 S.W.3d at 618. In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be given to their testimony. *Id.* at 5–6, 669 S.W.3d at 617–18. In a child-support determination, the amount of child support lies within the sound discretion of the circuit court, and the court's findings will not be reversed absent an abuse of discretion. *Id.*, 669 S.W.3d at 618. An abuse of discretion generally occurs when the circuit court's discretion is applied thoughtlessly, without due consideration, or improvidently. *Grynwald v. Grynwald*, 2022 Ark. App. 310, at 3, 651 S.W.3d 177, 180.

Armstrong first argues that the circuit court incorrectly calculated his 2021 income. However, that argument is not preserved. The only information that Armstrong submitted to the court regarding his 2021 income was the piece of paper with the handwritten notation reflecting a "2021 Year to Date Income" of $233,866.52, a much higher number than that ultimately utilized by the court. Neither Armstrong's affidavit of financial means nor his letter brief mentions his 2021 income. The 1099 TDR-2021 was submitted by Keeton for the purpose of being utilized to determine Armstrong's gross income, with no objection by Armstrong when the court specifically inquired if he had any to its admission. Armstrong's child-support-modification motion was filed on April 29, 2020; the briefs were filed November 1, 2021; and the order was entered April 7, 2022. Armstrong did not respond to Keeton's brief or object to Keeton's computations and use of the 1099 TDR-2021 within her brief, despite approximately five months having elapsed between the time the briefs were filed and entry of the order.

In *Grynwald*, the appellant argued that the court erred by following the prior version of Admin. Order 10 in calculating his child-support obligation rather than following the amended version. 2022 Ark. App. 310, 651 S.W.3d 177. There, the trial occurred before the new guidelines were implemented, and the letter opinion and divorce decree were issued after the new guidelines were implemented. *Id.* at 5, 651 S.W.3d at 181. The appellant did not make that argument to the circuit court, and as a result, this court held that the appellant's argument was being raised for the first time on appeal and thus was not preserved

for review. *Id.* While the argument here is slightly different, the principle is the same. Armstrong raises his argument regarding his 2021 income for the first time on appeal; thus, it is not preserved for our review. *See id.*; *see also Morris v. Morris*, 2021 Ark. App. 415, at 7–8.

Next, Armstrong argues that the circuit court's ultimate calculation of his income for child-support purposes was clearly erroneous because the circuit court should have used only his 2019 and 2020 personal tax records.[4] Admin. Order 10 requires that a party's actual gross income be used. Ark. Sup. Ct. Admin. Order No. 10(III). Section (III)(2) of Admin. Order 10 governs "income from self-employment, business owners, executives, and others." Subsection b of that section provides that, "at a *minimum*, a self-employed parent shall provide their two most recent years of state and federal tax returns." (Emphasis added.) The two years of personal tax returns provided by Armstrong and advanced by him as the only accurate and applicable proof of his income was the *minimum*, and Armstrong has provided no legal authority that prohibited the circuit court from considering additional documents or records, specifically, the TAP tax returns.

To the contrary, Admin. Order 10 makes clear that documents and records other than personal tax returns may be utilized in making a child-support determination, particularly when it comes to a self-employed individual such as Armstrong:

---

[4]To the extent Armstrong's second point on appeal encompasses his issue with the court's calculation or use of his 2021 income, that argument is not preserved as set forth previously.

> To determine monies that a parent has available for support, it may be necessary to examine business tax returns, balance sheets, accounting or banking records, and other business documents to identify additional monies a parent has available for support that were not included as personal income.

Ark. Sup. Ct. Admin. Order No. 10(III)(2)(b). Moreover, Admin. Order 10 specifically provides that "income is intentionally broad and designed to encompass the widest range of sources consistent with the State's policy to interpret 'income' broadly for the benefit of the child." *Id.* § (III)(1). Thus, the circuit court's utilization of the TAP tax records did not run afoul of Admin. Order 10.

Armstrong also takes issue with the circuit court adding back certain deductions made in his TAP tax returns. Again, this is permitted by Admin. Order 10. In reference to deductions for tax purposes, it provides that the same considerations that permit "considerable deductions for business-related expenses . . . are not always relevant to monies a parent should have available for child support," and some deductions, such as those for personal vehicles or home offices, should be added back. Ark. Sup. Ct. Admin. Order No. 10(III)(2)(i). The provision makes clear that the list of examples of deductions that should be added back for purposes of calculating a child-support obligation is not exhaustive.

Armstrong, attacking the proof on which the circuit court relied, further argues that the only "competent evidence" before the court consisted of his 2019 and 2020 personal income-tax records, and there was no finding that his tax returns were unreliable. While Armstrong is correct that there was no finding that his tax returns were unreliable, he did not request or argue such a finding, and the circuit court was not required to make such a

9

finding sua sponte, particularly when the returns at issue were prepared for Armstrong and for his business, and there was no objection to their introduction. Because no finding of unreliability was made regarding the tax returns, the circuit court was not required to apply the factors set out in *Tucker v. Office of Child Support Enforcement*, 368 Ark. 481, 247 S.W.3d 485 (2007), or use the "net-worth approach" previously provided for in Admin. Order 10. Moreover, Armstrong's motion specifically requested that the court use the amended version of Admin. Order 10. Armstrong was given ample opportunity to provide different or additional evidence regarding his income or to object to the evidence provided by Keeton, including at the express invitation of the court. If there was some issue with the proof presented, it was incumbent upon him to bring it to the court's attention and receive a ruling. His failure to do so does not warrant reversal.

Armstrong argues that the circuit court resorted to speculation and "best guesses." However, the circuit court was provided with evidence that Armstrong's business provided him with "additional monies . . . available for support that were not included as personal income," which the court then utilized in determining his gross income. Ark. Sup. Ct. Admin. Order No. 10(III)(2)(b). The circuit court properly applied revised Admin. Order 10—not a previous approach from a previous version—against the evidence it had been provided. As such, the circuit court did not err.

Armstrong's final argument is that any child-support modification should have been made retroactive to the date he filed his motion—April 29, 2020—and not retroactive to the date of the hearing on the motion—October 11, 2021. "'The commencement date of an

10

award of child support is a matter within the discretion of the trial court.'" *Grynwald*, 2022 Ark. App. 310, at 9, 651 S.W.3d at 183 (quoting *Pardon v. Pardon*, 30 Ark. App. 91, 93, 782 S.W.2d 379, 380 (1990)). This court has previously held that it was "proper for the court to fix the effective date of an order of child support from the date of filing of the petition or complaint, or from the date of trial, or from the date of the parties' separation." *See id.*, 651 S.W.3d at 183 (citing *Pardon*, 30 Ark. App. 91, 782 S.W.2d 379).

Armstrong attempts to rely on Arkansas Code Annotated section 9-14-107(d), which provides that "any modification of a child support order shall be effective as of the date of service on the other party of the file-marked notice of a motion for increase or decrease in child support *unless otherwise ordered by the court*." (Emphasis added.) Contrary to Armstrong's argument that section 107 mandates retroactivity to the date of the filing of the motion, it specifically permits the court to order otherwise. Here, approximately four months after MC1 moved in with Armstrong, he moved for the modifications at issue and did not request a hearing until August 2021. Given the record and standard of review, we cannot say that an abuse of discretion occurred. Accordingly, we affirm.

Affirmed.

GLADWIN and MURPHY, JJ., agree.

*Alexander Law Firm*, by: *Hubert W. Alexander*, for appellant.

*Owings Law Firm*, by: *Tammy B. Gattis*, for appellee.